MILLERS NATIONAL INSURANCE COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2516–68.   Filed March 9, 1970.

*Peter H. Huizenga* and *Jack R. Hlustik*, for the petitioner.
*Seymour I. Sherman*, for the respondent.

### OPINION

FAY, *Judge:* Respondent determined a deficiency of $3,818.59 in petitioner's Federal income tax for 1962.

The sole issue before the Court is whether petitioner is entitled in 1962 to an investment credit on property used in its underwriting activities.

All of the facts were stipulated. The stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Petitioner is a corporation organized under the laws of the State of Illinois. Its principal place of business is in Chicago, Ill. Petitioner filed its Federal income tax return for calendar year 1962 with the district director of internal revenue, Chicago, Ill.

During 1962 petitioner was a mutual insurance company other than a life or marine insurance company or fire insurance company issuing perpetual policies.

In its return for taxable year 1962, petitioner claimed an investment credit in the amount of $4,444.70 on the purchase of new tangible personal property which was placed in service in the year 1962. Of the foregoing investment credit claimed, respondent has allowed $626.11, representing that portion used by petitioner in its investment activities, and has disallowed $3,818.59, representing that portion of new tangible personal property placed into service by petitioner in the year 1962 having a useful life of 8 years or more which was used by petitioner in its underwriting activities.

At all times pertinent petitioner participated in the Association of Mill and Elevator Insurance Companies (association). In 1962 the association acquired tangible personal properties, which it utilized solely in underwriting operations, the income of which was not subject to Federal income tax in that year. Petitioner contends it is entitled to an investment credit for 1962 of $482.50 with regard to the property acquired by the association.

The sole issue presented is whether petitioner is entitled to an investment credit for 1962 on property used in its underwriting activities.

Under section 48 [1] property is not eligible for the investment credit unless it is property with respect to which depreciation is allowable. The legislative history states:

If an asset is in part subject to an allowance for depreciation and in part nondepreciable, only the proportionate part of the asset which is subject to depreciation will qualify as section 38 property. Thus, if an asset is used 80 percent of the time in a trade or business and is used 20 percent of the time for personal purposes, only 80 percent of such property will qualify as section 38 property subject to depreciation.

H. Rept. No. 1447, 87th Cong., 2d Sess., p. A17 (1962) ; S. Rept. No. 1881, 87th Cong., 2d Sess., p. 154 (1962).

The U.S. Supreme Court has held that depreciation is allowable to an insurance company on assets used in its investment department but not on those assets used in its underwriting activities. The Court noted that under the pertinent statute the insurance company was taxable on its investment income but not on its underwriting income. The Court then concluded that Congress intended to limit deductions of expenses to those related to taxed income. *Rockford Life Ins. Co.* v. *Commissioner*, 292 U.S. 382 (1934). During 1962 petitioner, like the taxpayer in the foregoing case, was taxed on its investment income but not on its underwriting income.[2] Since petitioner was not entitled

---

[1] All references hereinafter to "section" are to the Internal Revenue Code of 1954.

[2] In 1962 and prior years petitioner was taxed, pursuant to sec. 821 under one of two formulas, whichever produced the greater tax. The first formula taxed investment income and capital gains at the rate applicable to ordinary corporations, while the second formula taxed the sum of investment income and net premiums written in its underwriting operations, less policyholder dividends, at 1 percent. In 1962 petitioner reported its income according to the first formula.

in 1962 to depreciation on assets used in its underwriting activites, concomitantly under the provisions of section 48 petitioner also should not be entitled in 1962 to an investment credit on those same assets.

Petitioner has raised a series of arguments in opposition to respondent's position. Although we view each of these arguments as being without merit, because of the extensive effort to which petitioner has gone in its research we feel compelled to discuss these arguments.

Petitioner has directed the Court's attention to Form 1120M (U.S. Mutual Insurance Company Income Tax Return) which it filed for calendar year 1962. This form states that the investment credit may be available beginning in 1962. Petitioner infers that it is entitled to the credit because of such statement on the return. We do not read Form 1120M as suggesting that a mutual insurance company is entitled to the credit regardless of the formula used in reporting its income. Even if such inference were correct, the statement on the return form would not be binding against respondent. *Meridian Mutual Insurance Co.* v. *Commissioner*, 369 F. 2d 508 (C.A. 7, 1966), affirming 44 T.C. 375 (1965).

Petitioner also contends that respondent misconstrues the word "allowable" appearing in section 48(a). It is petitioner's position that the investment credit is available on all tangible personal property which is depreciable in nature, whether or not a depreciation deduction is currently available regarding such property. Petitioner points out section 48(a)(4), which provides that property used by certain tax-exempt organizations generally does not qualify for the investment credit. Petitioner argues that if respondent's interpretation of the word "allowable" is correct, Congress was being redundant in enacting a special provision disallowing the credit to tax-exempt organizations.

Our reply to petitioner's construction of the word "allowable" is two-pronged. First, petitioner confuses the words "allowable" and "sustained." See *Virginian Hotel Co.* v. *Helvering*, 319 U.S. 523 (1943). Congressional awareness of this difference is evident from the amendment of section 1016(a)(3) in 1962. This amendment was considered at the same time as the statutory changes regarding taxation of mutual insurance companies.[3] See H. Rept. No. 1447, *supra* p. A78; S. Rept. No. 1881, *supra* p. 222.

Second, as to the specific provision regarding tax-exempt organizations, Congress had in mind a potential abuse which petitioner over-

---

[3] SEC. 1016. ADJUSTMENTS TO BASIS.

(a) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

  *      *      *      *      *      *      *

  (3) * * * [relating to companies taxed under subch. L]

  for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent sustained; * * *

looks. By such provision Congress intended to deny the credit to those persons who lease property to or from tax-exempt organizations. H. Rept. No. 1447, *supra* p. A21; S. Rept. No. 1881, *supra* p. 157.

Petitioner also quotes at length testimony of the Secretary of the Treasury to show that the Treasury Department, aware that mutual insurance companies would qualify for the investment credit commencing in 1963, did not intend to deny the investment credit to insurance companies for 1962. As finally enacted, we find no provision in the Revenue Act of 1962 or statement in the underlying legislative history supporting petitioner's assertion.

*Decision will be entered under Rule 50.*