FRIEDMAN, Circuit Judge.
 

 This case is a sequel to
 
 Critzer v. United States,
 
 597 F.2d 708, 220 Ct.Cl. 43 (Fed. Cir.),
 
 cert. denied,
 
 444 U.S. 920, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979). There the Court of Claims held that income received by an Indian from businesses she operated on tax-exempt land and from leases of buildings upon such land was not exempt from federal income taxes. In the present case, members of the same tribe of Indians that was involved in
 
 Critzer
 
 seek a federal income tax exemption for the portion of the same kind of income involved in
 
 Critzer
 
 that reflects the rental value of the underlying land itself. The Claims Court held that the Indians are not exempt from tax upon that portion of their income.
 
 Saunooke v. United States,
 
 9 Cl.Ct. 537 (1986). We affirm.
 

 I
 

 A. The pertinent facts either have been stipulated or are not in dispute.
 

 Four of the eight petitioners are enrolled members of the Eastern Band of Cherokee Indians (Eastern Band). The four other petitioners, who are their spouses, are not enrolled members of any Indian tribe.
 

 The land involved is part of the Eastern Cherokee Reservation in North Carolina. The United States owns all the reservation land in trust for the Eastern Band. The petitioners hold their land pursuant to Certificates of Possessory Holding that the tribe issued to them.
 

 These “possessory holdings” are specific parcels of tribal land permanently assigned to specific tribal members. The certificate authorizes the holder to construct buildings and other improvements on the land, which are considered the personal property of the holder and in which the tribe has no interest. When the holder dies, the holder’s interest normally is permitted to pass to his devisees or heirs under North Carolina law, provided those individuals are members of the tribe.
 

 Although the land of the Eastern Cherokee Reservation generally is unsuited for large-scale agricultural, grazing, or timber activities, it is suitable for tourism because of its location adjacent to the Great Smoky National Park in an area of beautiful mountains with a scenic river and tributary creek. The Eastern Band’s economy thus is based largely upon the tourist business.
 

 During the tax years at issue here (1971 to 1982), the four tribal members operated various businesses on their possessory holdings, including shops, motels, and a
 
 *1055
 
 restaurant. Some of them also received rental income from buildings located on their possessory holdings.
 

 B. In their federal income tax returns for the years in issue, the petitioners included in taxable income all their income from the businesses conducted upon, and rental income derived from, their possessory holdings. They subsequently filed with the Commissioner of Internal Revenue claims for refund for the portions of that income representing the fair rental value of the land itself. Upon the denial of the refund claims, the petitioners filed the present suit in the Claims Court.
 

 On cross-motions for summary judgment, the Claims Court granted the government’s motion, denied the petitioners’ motion, and dismissed the complaint. Applying the test of
 
 Squire v. Capoeman,
 
 351 U.S. 1, 9, 76 S.Ct. 611, 616, 100 L.Ed. 883 (1956), that “the exemption from taxation accorded Indian income by the General Allotment Act extends only to that income which is ‘derived directly’ from the land,” the court ruled that
 

 the income from plaintiffs’ business operations in this case is not “derived directly” from the land. Plaintiffs operate gift shops, restaurants, motels, and a gas station. These operations are land based to the extent that the parcels upon which they lie carry an aesthetic and historical allure. However, the functioning of these establishments does not in any way exploit or reduce the value of plaintiffs’ possessory holdings. Consequently, plaintiffs are not entitled to an exemption from taxation.
 

 9 Cl.Ct. at 540-42 (footnote omitted).
 

 II
 

 The question in
 
 Capoeman
 
 was whether the proceeds of the sale of timber growing on land allotted to noncompetent Indians was subject to the capital gains tax. The government contended that the Indians were taxable the same as any other citizens. The Court rejected that contention, holding that an amendment to section 6 of the General Allotment Act of 1887 exempted the Indians’ land from tax, and it quoted with approval the following statement by Felix Cohen, “an acknowledged expert in Indian law”:
 

 [T]he exemption accorded tribal and restricted Indian lands extends to the income derived directly therefrom.
 

 351 U.S. at 9, 76 S.Ct. at 616 (footnote omitted).
 

 The Court then stated as follows:
 

 The wisdom of the congressional exemption from tax embodied in Section 6 of the General Allotment Act is manifested by the facts of the instant case. Respondent’s timber constitutes the major value of his allotted land. The Government determines the conditions under which the cutting is made. Once logged off, the land is of little value. The land no longer serves the purpose for which it was by treaty set aside to his ancestors, and for which it was allotted to him. It can no longer be adequate to his needs and serve the purpose of bringing him finally to a state of competency and independence. Unless the proceeds of the timber sale are preserved for respondent, he cannot go forward when declared competent with the necessary chance of economic survival in competition with others.
 

 Id.
 
 at 10, 76 S.Ct. at 617 (footnotes omitted).
 

 Although the petitioners base their exemption claim primarily upon the East-' em Cherokee Allotment Act, 25 U.S.C. § 331 note (1982) (at 1020-23), 43 Stat. 376 (1924), rather than upon the General Allotment Act involved in
 
 Capoeman,
 
 they recognize that the test of entitlement to a tax exemption is the same under both statutes, namely, whether the income for which the exemption is sought is “derived directly” from the land. That also was the test the Court of Claims applied in
 
 Gritzer.
 

 Critzer
 
 involved another enrolled member of the Eastern Band, who sought an exemption from federal income tax for income derived from businesses she operated upon and from leases on buildings located on the same tax exempt reservation land
 
 *1056
 
 involved in this case. The Court of Claims, sitting
 
 in banc,
 
 held that
 

 income realized by an Indian landholder in the operation of a motel, a restaurant, gift shop, and from building rentals, is not income directly derived from the land and is not immune from federal income tax simply because the businesses and buildings are physically located on tax-exempt reservation land.
 

 597 F.2d at 714.
 

 The court left open the question in the present case:
 

 Again, we do not say that the land is not of
 
 some
 
 value in helping create income such as that realized from the operation of a motel. Even the Government admits that it might be appropriate in certain instances to allocate income based upon the relative value of the land vis-a-vis any improvements or services. However, we do not reach this problem of allocation in the matter of Mrs. Critzer. That issue remains for yet another case on another day, since plaintiff has not raised it in the case at bar.
 

 Id.
 
 at 714 (footnote omitted).
 

 We now hold that the portion of the petitioners’ income from the operation of businesses and leases of buildings upon tax-exempt land that represents the fair rental value of the land itself is not “derived directly” from the land under the
 
 Capoeman
 
 test. Accordingly, that portion of the petitioners’ income is not exempt from federal income tax.
 

 If, as
 
 Critzer
 
 held, the income from the businesses and buildings on the tax exempt land was not derived directly from the land, it is difficult to understand how the portion of that income reflecting the fair rental value of the land itself could be viewed as derived directly from the land. The rental value of the land did not provide any direct income to the petitioners. At most, the land reduced the petitioners’ expenses in operating their businesses and rental properties, since if they had had to pay rent for the land, their income from those commercial ventures would have been less. This reduction in the expenses of their business operations was not income derived directly from the land upon which they conducted those businesses.
 

 Under the
 
 Capoeman
 
 test, Indian income is not tax exempt merely because the tax-exempt land contributed to the production of the income. To be tax exempt, the income must have been derived “directly” from the land. The portion of the petitioners’ income reflecting the fair rental value of the land does not satisfy that requirement.
 

 The conclusion we reach here is in accord with the recent decision of the Ninth Circuit in
 
 Dillon v. United States,
 
 792 F.2d 849 (9th Cir.1986). There Indians who operated a smokeshop on allotted tribal land sought an exemption from federal income taxes for their income from the smokeshop or, alternatively, from the “portion of their income equal to the fair rental value of their property.”
 
 Id.
 
 at 857. In affirming the tax court’s rejection of the latter argument, the court of appeals stated:
 

 This allocation argument is essentially another attempt by taxpayers to broaden the rule in
 
 Capoeman
 
 to exempt smokeshop income. The government’s perspective on this issue is correct: “The simple answer to taxpayers’ argument is that they did not receive any rental income with respect to their trust properties.”
 

 We reject taxpayers’ allocation theory of exemption for two reasons. First allocating imputed rent income to the trust property is not required or permitted under the
 
 Capoeman
 
 rule. The bare land’s fair rental value bears no rational relationship to the amount of income “derived directly” from the improved land. Such allocation would permit exemption of
 
 all
 
 income from a business on trust land up to the land’s fair rental value, even where the income is otherwise clearly outside the “derived directly” standard of
 
 Capoeman
 
 (for example, selling stocks and bonds from a telephone booth on trust land).
 
 See Critzer,
 
 597 F.2d at 713.
 

 
 *1057
 
 Second, taxpayers and amici curiae have cited no authority (and we have found none) for imputing rental income to a taxpayer using his own property in the operation of a business. Nor, under general tax laws, may a taxpayer using his own property to generate business income, deduct the annual fair rental value of the property from his business income. Moreover, guaranteeing a tax exemption equal to the fair rental value of the property, where no rent was actually paid or accrued, is contrary to the business expense provisions of 26 U.S.C. § 162(a).
 

 We reject taxpayers’ attempt to exempt a portion of their income based on the fair rental value of the property. As the majority in
 
 Cross \v. Commissioner
 
 ] below concluded: “Aside from the difficult computational and valuation problems involved, we are not willing to assume that this constructed value represents income ‘directly derived’ from the land.” 83 T.C. [561, 567] (1984).
 

 Id.
 

 We have no reason to disagree with this reasoning or result.
 

 The petitioners argue, however, that under various rulings of the Commissioner of Internal Revenue on whether particular types of Indian income were derived directly from tax-exempt land, the rental value of their land is closer to income held to have been derived directly than to income held not to have been so derived. Without discussing the details of those rulings, which may not be wholly consistent, we conclude that because they dealt with wholly different factual situations from that of the present case, they are not persuasive authority here.
 

 The petitioners also rely upon what they describe as the Indian canon of construction that “statutes enacted for the benefit of Indians (in this case the Eastern Cherokee Allotment Act) are to be construed in their favor.” The decision of this case, however, turns not upon the meaning of the Eastern Cherokee Allotment Act but upon the application of the “derived directly” test of
 
 Capoeman.
 
 As we have shown, under that test the fair rental value of the land upon which the petitioners operate their commercial ventures is not exempt from federal taxation.
 

 CONCLUSION
 

 The- judgment of the United States Claims Court dismissing the petitioners’ complaint is affirmed.
 

 AFFIRMED.