DONALD A. RICKARD AND ESTATE OF EVA C. RICKARD, DECEASED, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3900-83.        Filed January 21, 1987.

---

*Richard M. Berley*, for the petitioners.
*Thomas N. Tomashek*, for the respondent.

HAMBLEN, *Judge*: Respondent determined deficiencies in petitioners' Federal income tax as follows:

| Year ended Dec. 31— | Deficiency |
| --- | --- |
| 1978 | $1,658 |
| 1979 | 1,745 |

The primary issues for determination are (1) whether petitioners are entitled to deductions for expenses allocable to farming income and (2) whether petitioners are entitled to the investment tax credit with respect to assets used in their farming operations.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners resided in Inchelium, Washington, at the time the petition was filed.[1] Petitioner is an enrolled member of the Colville Confederated Tribes.

The farm losses and investment tax credits at issue in this case derive from operation of a cattle farm on land held in Indian trust status by the United States for petitioner. This property is located on the Colville Indian Reservation, Inchelium, Washington. In 1968, petitioner inherited a one-twelfth interest in real property, in trust, from his mother, Minnie Rickard. This land was originally allotted to Minnie Rickard pursuant to special Colville Reservation

---

[1] Petitioner Donald A. Rickard and Eva C. Rickard were married during tax years 1978 and 1979. Eva C. Rickard, an enrolled member of the Colville Confederated Tribes, died on Jan. 28, 1981. Donald A. Rickard is the personal representative of the Estate of Eva C. Rickard, deceased. "Petitioner" in the singular form shall hereinafter refer to Donald A. Rickard.

allotment acts — the Act of March 8, 1906, 34 Stat. 55, and the Act of March 22, 1906, 34 Stat. 80.[2] In 1971, petitioner purchased the remaining eleven-twelfths interest from other fractional inheritors. The purchased land, located in Eastern Washington State in Ferry County, was deeded to the United States in trust for petitioner.

In total, petitioner owns 100 acres of land held in trust and 47 acres in fee.[3] On the trust land petitioner raises and sells approximately 18 to 20 head of beef cattle. Petitioner does all of his own labor and borrows no money. In sum, we find petitioner's farm to be well maintained and efficient for its size and geographic location.[4] Petitioner did not sustain a profit on his farm for 1978 and reported a gross profit of $722 for 1979.[5]

Petitioner works in logging camps as a heavy equipment operator when he fails to make a profit on the farm. In 1978 and 1979, petitioner received wages of $13,859.04 and $15,741.39, respectively, for such work.

---

[2]Modeled after the General Allotment Act of 1887, 24 Stat. 388, 25 U.S.C. sec. 331 et seq. (1982), the Acts of March 8, 1906, and March 22, 1906, authorized allotments of reservation land to Colville Indians. The Act of March 22, 1906, 34 Stat. 80, called for allotments of 80 acres to each "man, woman, and child" and that, upon approval of such allotments by the Secretary of Interior, the trust patents were to be issued "under the provisions of the general allotment law of the United States." The General Allotment Act provided that allotted land was to be held in trust by the United States for the "sole use and benefit" of the Indian allottees for a period of at least 25 years. 25 U.S.C. sec. 348. The Indian Reorganization Act of 1934, 48 Stat. 984, 25 U.S.C. sec. 462, extended the periods of trust "until otherwise directed by Congress."

More importantly, the Act of March 8, 1906, 34 Stat. 55, contains the key language of the General Allotment Act interpreted by the Supreme Court in *Squire v. Capoeman*, 351 U.S. 1 (1956), discussed *infra*. The Act of March 8, 1906, states that at the end of the trust period, the land was to be conveyed to the allottee "in fee, discharged of said trust and free of all charge or incumbrance whatsoever." In addition, an amendment to sec. 6 of the General Allotment Act states that:

"the Secretary of the Interior may, in his discretion, and he is authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter *all restrictions as to sale, incumbrance, or taxation of said land shall be removed* and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent. * * * [25 U.S.C. sec. 349 (1982). Emphasis supplied.]"

In 1917, petitioner's mother, Minnie Rickard, received her allotment of 100 acres pursuant to these qualifications.

[3]The nontrust land is a vacant lot and has no bearing on the case before us.

[4]Various factors limit agricultural possibilities in Ferry County, Washington, such as dry, short growing seasons, sandy to rocky soil, steep terrains, and limited local demand.

[5]In the taxable year 1978, petitioner sold timber from his trust land for $14,064.59. Petitioner noted the timber sale on Schedule D of his 1978 Form 1040 return and stated that *this income was tax exempt as he was a member of the Colville Confederated Tribes.*

On his 1978 return, petitioner deducted $6,527 on Schedule F for farm losses and claimed an investment tax credit of $192. In 1979, petitioner deducted $7,783 on Schedule F for farm losses and claimed an investment tax credit of $490.[6]

In his notice of deficiency dated December 2, 1982, respondent denied petitioners' Schedule F deductions and investment tax credits for the taxable years 1978 and 1979. Respondent asserts that, as petitioners were enrolled members of the Colville Indian Tribe, the net income derived from petitioners' land is exempt from Federal income tax under *Squire v. Capoeman*, 351 U.S. 1 (1956). First, respondent contends that the losses claimed by petitioner from his farm operation in the years 1978 and 1979 are prohibited by section 265(1)[7] as amounts allocable to a class of income exempt from Federal income tax. Second, respondent asserts that, as the investment tax credit claimed by petitioner for the years 1978 and 1979 relate to farm assets which are not section 38 property, no credit is allowable. Petitioner argues that respondent's position is inconsistent with the Supreme Court's rationale behind *Squire v. Capoeman*, 351 U.S. 1 (1956), and subverts the remedial purpose of the General Allotment Act to the prejudice of the Indians. Petitioner concludes that *Squire v. Capoeman*, *supra*, should not be used to harm those it was expressly meant to protect and, as a result, petitioners should be allowed to take their farm losses and investment tax credits for the taxable years 1978 and 1979.

### OPINION

We now turn to the issues before us. First, we must determine whether losses from farming operations on Indian allotment land are deductible when profits from such operation are exempt from income tax. Second, we must

---

[6]In 1978, petitioner deducted $5,033 in farm expenses and $1,494 in depreciation for a total deduction of $6,527 on Schedule F. In 1979, petitioner deducted $6,602 in farm expenses and $1,903 in depreciation for a total of $8,505 in total deductions. Petitioner claimed $722 in farm income from the sale of cattle and dairy products to reach a deduction amount of $7,783.

[7]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

determine the propriety of an investment tax credit for such a tax-exempt activity.

Section 61 defines gross income to include "all income from whatever source derived." It is well established that the income of Indians is taxable under this section, "unless an exemption from taxation can be found in the language of a Treaty or Act of Congress." *Commissioner v. Walker*, 326 F.2d 261, 263 (9th Cir. 1964). The mere fact that petitioners are Indians will not preclude them from being liable for the payment of income tax. *Choteau v. Burnet*, 283 U.S. 691 (1931); *Superintendent v. Commissioner*, 295 U.S. 418 (1935). In order to avoid tax liability, petitioners must point to "express exemptive language in some statute or treaty" showing that they need not include amounts in their gross income. *United States v. Anderson*, 625 F.2d 910, 913 (9th Cir. 1980), cert. denied 450 U.S. 920 (1981); *Cross v. Commissioner*, 83 T.C. 561, 564 (1984), affd. 792 F.2d 849 (9th Cir. 1986). See *Welch v. Helvering*, 290 U.S. 111 (1933).

Petitioner and respondent agree that if petitioners had earned a profit from their farm operations for the taxable years 1978 and 1979, petitioners' farm income would have been exempt under *Squire v. Capoeman*, 351 U.S. 1 (1956), as income "derived directly" from the land. Furthermore, petitioner and respondent agree that if petitioners' farm income was not exempt under *Squire v. Capoeman, supra*, petitioners would be entitled to deduct their farm losses and be allowed their claimed investment tax credits from their farming operation. Thus, the parties do not dispute that *Squire v. Capoeman, supra*, is applicable with respect to petitioner's operation.[8]

Respondent asserts that section 265(1) bars the deduction of the farm losses. We agree for the following reasons.

Section 265(1) provides:

---

[8]Income from farming and ranching on allotted land is exempt from Federal income tax as income "derived directly" from land. *Stevens v. Commissioner*, 452 F.2d 741 (9th Cir. 1971). Moreover, the fact that petitioners' land is governed by special allotment laws is not an obstacle to applying the *Squire v. Capoeman*, 351 U.S. 1 (1956), holding. It is well settled that the varying special allotment laws are to be construed "in pari materiae" with the General Allotment Act as part of a unified congressional scheme. *Stevens v. Commissioner, supra* at 744-748; *Kirkwood v. Arenas*, 243 F.2d 863, 867 (9th Cir. 1957).

SEC. 265. EXPENSES AND INTEREST RELATING TO TAX-EXEMPT INCOME.

No deduction shall be allowed for—

(1) EXPENSES.—Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle, or any amount otherwise allowable under section 212 (relating to expenses for production of income) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this subtitle.

Under this provision, an amount cannot be deducted if it is "allocable to" a class of tax-exempt income other than interest. A class of tax-exempt income includes any class of income wholly excluded from gross income under any provision of subtitle A of the Code or under the provisions of any other law. Sec. 1.265-1(b)(1), Income Tax Regs. The legislative purpose behind section 265 is abundantly clear: Congress sought to prevent taxpayers from reaping a double tax benefit by using expenses attributable to tax-exempt income to offset other sources of taxable income.[9] *Manocchio v. Commissioner*, 78 T.C. 989, 997 (1982), affd.

---

[9]The House report states:

"Section 24(a)5. Disallowance of deductions attributable to tax-exempt income: This paragraph has been added to the bill to eliminate as deductions from gross income expenses allocable to the production of income wholly exempt from the income tax. Under the present law interest on State securities, salaries received by State employees, and income from leases of State school lands are exempt from Federal income tax, but expenses incurred in the production of such income are allowed as deductions from gross income. H. Rept. 704, 73d Cong., 2d Sess. (1934), 1939-1 C.B. (Part 2) 554, 571."

The Senate report states:

"Section 24(A)5. Disallowance Of Deductions Attributable To Tax-Exempt Income:

*"The House bill disallows amounts otherwise allowable as deductions which are allocable to one or more classes of tax-exempt income even though the income fails to materialize or is received in an amount less than the expenditures made or incurred.* For instance, under the present law, salaries received by State employees, income from leases of State school lands, and the interest on State and some classes of Federal securities are exempt from the income tax. It is contended that under the existing law all expenses incurred in the production of such income are allowable as deductions. The House bill specifically disallows expenses of this character. While your committee is in general accord with the House provision, it is not believed that this disallowance should be made to apply to expenditures incurred in earning tax-exempt interest. To do so might seriously interfere with the sale of Federal and State securities, which would be unfortunate during the present emergency. Accordingly, your committee recommends that the disallowance be applied to all classes of tax-exempt income except interest. Thus, a bank or other financial institution will not be denied a deduction for expenses incurred in earning tax-exempt interest. [S. Rept. 558, 73d Cong., 2d Sess. (1934), 1939-1 C.B. (Part 2) 586, 606. Emphasis supplied.]"

710 F.2d 1400 (9th Cir. 1983).[10] More importantly, the Supreme Court has concluded that Congress intended to limit deductions to those expenses related to taxed income. *Rockford Life Insurance Co. v. Commissioner*, 292 U.S. 382 (1934). As petitioners' income is exempt by virtue of *Squire v. Capoeman, supra*, and its interpretation of the General Allotment Act, we hold that petitioners must be denied their farming expense deductions in taxable years 1978 and 1979.

We now turn to respondent's disallowance of petitioners' investment tax credit. Section 38(a) allows an investment tax credit for certain acquisitions of depreciable property. Such property is called "section 38 property." The section 38(a) investment tax credit was enacted as part of the Revenue Act of 1962, Pub. L. 87-834, 76 Stat. 960. The credit was intended to spur economic growth by encouraging investment and capital formation. S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707. Farm equipment and machinery generally qualify for the section 38(a) investment tax credit.

However, we agree with respondent that the tax-exempt nature of petitioners' farm income results in a denial of the investment tax credit for assets used in petitioner's farming operation for the following reasons. We begin by observing that section 48(a) provides the definition of section 38 property. Section 48(a) states that:

Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 3 years or more. * * *

---

[10]We note that the Court of Appeals for the Ninth Circuit affirmed the *Manocchio* result but chose to follow a sec. 162 rationale for denying expense deductions that are later reimbursed. The Court of Appeals expressly stated that because it rested its decision on the definition of an expense under sec. 162, it was not necessary to reach our construction of sec. 265(1). *Manocchio v. Commissioner*, 710 F.2d at 1402 n. 2. Here, we believe that the facts necessitate that we follow sec. 265(1) as expressed in our opinion in *Manocchio v. Commissioner*, 78 T.C. 989 (1982).

Furthermore, we find petitioner's contention that *Manocchio* is not analogous to the case at issue to be without merit. While petitioner is correct that the nonreimbursed portion of the *Manocchio* taxpayer's flight training expenses were deductible, the tax-exempt nature of the reimbursed expenses is the focal point of the case and its analysis under sec. 265(1). In both *Manocchio* and the case before us, income is tax exempt under Federal law and comes directly under the purview of sec. 265(1).

Thus, the assets must qualify as property "with respect to which depreciation (or amortization in lieu of depreciation) is allowable."[11] Section 265(1) prohibits the allowance of any deduction, including depreciation, allocable to tax-exempt classes of income.[12] As a result, because depreciation is not allowable with respect to the farm assets, petitioners' assets do not meet the definition of section 38 property under section 48(a) and cannot qualify for the investment tax credit. *Millers National Insurance Co. v. Commissioner*, 54 T.C. 457 (1970).

Moreover, where the language of the statute plainly denies the credit, the credit may be allowed only if the legislative history contains "clear contrary evidence of legislative intent." *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458 (1974). There is no clear contrary evidence that Congress intended that allottee Indians' farming operations be entitled to the investment tax credit. In fact, we find that the legislative intent behind the enactment of the investment tax credit mandates that we deny the credit in this case. Section 48(a)(4) states that property "used" by a *tax-exempt* organization may be treated as section 38 property only if the property was used "in an unrelated trade or business the income of which is subject to tax." Sec. 48(a)(4). See *Kleinsasser v. United States*, 707 F.2d 1024 (9th Cir. 1983). While petitioners are not a tax-exempt organization, the tax principle is much the same. The full legislative explanation for the section 48(a)(4) exclusion is as follows:

Property used by a tax-exempt organization (other than in a business to which the unrelated business income tax applies). The limitation on the allowance of the credit in this case is *designed to prevent an investment for use in connection with an exempt function from decreasing any tax on*

---

[11]Sec. 1.48-1(b)(1), Income Tax Regs., states that:

A deduction for depreciation is allowable if the property is of a character subject to the allowance for depreciation under section 167 and the basis (or cost) of the property is recovered through a method of depreciation, * * *

[12]We note that no rent deduction is allowed for rental of a smokeshop on tax-exempt reservation land. Under general tax law, a taxpayer may not use his own property to generate business income and then deduct the annual fair rental value of the property. Furthermore, the guarantee of a tax exemption equal to the fair rental value of the property, where no rent was actually paid or accrued, is contrary to the business expense provisions of sec. 162(a). See *Saunooke v. United States*, 9 Cl. Ct. 537 (1986), affd. 806 F.2d 1053 (Fed. Cir. 1986); *Cross v. Commissioner*, 792 F.2d 849 (9th Cir. 1986), affg. 83 T.C. 561 (1984).

*an unrelated trade or business.* [H. Rept. 1447, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 405, 416. Emphasis supplied.]

Section 48(a)(4)'s stated purpose is to prevent tax-exempt organizations from using credits from tax-exempt functions to reduce the tax burden on nonexempt functions. *Kleinsasser v. United States,* 707 F.2d at 1029. Accordingly, given the congressional intention, we cannot allow petitioners to take an investment tax credit in connection with property used in an exempt income activity to decrease tax on an unrelated taxed activity.[13]

Finally, turning to petitioners' policy contentions, we are satisfied that our decision does not frustrate the purpose of either the General Allotment Act, the Acts of March 8, 1906, and March 22, 1906, or the Supreme Court's decision in *Squire v. Capoeman, supra.* In *Squire v. Capoeman,* the Supreme Court construed sections 5 and 6 of the General Allotment Act of 1887, 25 U.S.C. sections 348, 349, to create an express tax exemption for an Indian deriving income from his own trust allotment. We agree with petitioners that the Supreme Court noted that the purpose of the General Allotment Act was to bring Indians to a point where they could have "the necessary chance of economic survival in competition with others." *Squire v. Capoeman,* 351 U.S. at 10. However, *Squire v. Capoeman* and every other Supreme Court and Court of Appeals for the Ninth Circuit case which has come to our attention have denied policy arguments in the absence of statutory or treaty language that conceivably is an express tax exemption. See *United States v. Anderson,* 625 F.2d 910, 914 (9th Cir. 1980).

Petitioner has directed us to no specific treaty language which is evidence of a tax deduction or credit. The law is well settled that tax deductions and credits are matters of legislative grace. *Deputy v. du Pont,* 308 U.S. 488, 493 (1940); *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440 (1932); *Hokanson v. Commissioner,* 730 F.2d 1245, 1250 (9th Cir. 1984). Despite our sympathy for petitioner and similarly situated Indians, in the absence of express treaty

---

[13]Petitioner's income from logging derives from an employment contract, not the land, and is not exempt under *Squire v. Capoeman, supra; Fry v. United States,* 557 F.2d 646, 648 (9th Cir. 1977); *Commissioner v. Walker,* 326 F.2d 261, 264 (9th Cir. 1964).

language or congressional approval, we cannot allow Indian farmers to be allowed a double tax benefit on policy alone:

it is one thing to say that courts should construe treaties and statutes dealing with Indians liberally, and quite another to say that, based on those same policy considerations which prompted the canon of liberal construction, courts themselves are free to create favorable rules. * * * [*Fry v. United States*, 557 F.2d 646, 649 (9th Cir. 1977).]

As this Court stated in *Cross v. Commissioner*, 83 T.C. at 568, it is a breach of faith with Indian citizens to tax income which represents the diminution of the trust asset. However, we find that it is a breach of faith with all other taxpayers, including Indians, to allow a double tax benefit to Indians farming on trust land without explicit congressional approval. While the temptation is great to expand the *Capoeman* decision and the Indian allottees tax exemptions in order to improve the economic well-being of the allottee Indians, we cannot put an equitable gloss on the clear language of the Internal Revenue Code. *Kleinsasser v. United States*, 707 F.2d at 1030. Petitioner must address his policy arguments to Congress, not to the courts. *United States v. Anderson*, 625 F.2d at 916-917.

To reflect the foregoing,

*Decision will be entered for the respondent.*