GLORIA ARVISO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Arviso
Docket No. 23940-91
United States Tax Court
T.C. Memo 1992-685; 1992 Tax Ct. Memo LEXIS 721; 64 T.C.M. (CCH) 1412; November 30, 1992, Filed *721 Decision will be entered under Rule 155. For Petitioner: Lamonte L. Hansen. For Respondent: Andrew J. Gottlieb. GOLDBERG
GOLDBERG
MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined deficiencies in petitioner's Federal income tax for tax year 1988 in the amount of $ 1,244.86 and for tax year 1989 in the amount of $ 2,167. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioner resided in Fort Wingate, New Mexico, when she filed her petition. After concessions, the issue for decision is whether petitioner is entitled to claim deductions from the activity of raising and training horses on land allotted to and held in trust for her by the United States Government pursuant to the Indian General Allotment Act of 1887 (the Act), ch. 119, 24 Stat. 388, 25 U.S.C. secs. 331-358 (1988). The resolution of this issue depends upon *722 whether income of this type is taxable or tax-exempt under the Act. Petitioner is a Navajo Indian who lives on 1 acre of land on the Navajo Reservation in Fort Wingate, New Mexico (the Reservation), where she conducts her horse-training activity. This land was allotted to her by the United States Government pursuant to the Act, which provided for allotment of reservation lands to Native Americans under certain restrictive terms to be discussed more fully below. Petitioner acquired her land in 1987 and will become eligible for a patent in fee simple after occupying it for 10 years. During tax years 1988 and 1989, petitioner purchased two young quarter horses, raised them, trained them, and sold them. Petitioner also worked full time as dean of student affairs at the Crownpoint Institute of Technology during the years in question. On her allotted land, petitioner has a home, a small barn, a round pen which she had constructed, and two stalls. Petitioner does not have grazing rights for her horses. Consequently, they are not allowed to roam freely on Reservation land; they live in their stalls and all their feed is purchased off the Reservation and brought in for them to eat. *723 Petitioner trained her horses on the land but showed them elsewhere. For tax years 1988 and 1989, petitioner had gross receipts from the sale of horses in the amounts of $ 1,600 and $ 2,400 and net losses of $ 5,500 and $ 8,317, respectively. The parties agree that, if the income from petitioner's horse-training activity is subject to Federal income tax, the expenses of earning that income are deductible but that, if the income is tax-exempt, the expenses attributable to the earning of tax-exempt income are not deductible. Sec. 265(a)(1); Rickard v. Commissioner, 88 T.C. 188 (1987). Sections 1 and 61(a) subject the income of "every individual" to tax and include income "from whatever source derived" unless specifically excluded. The Supreme Court has held that Indians, as citizens, are subject to the payment of income taxes "in the ordinary affairs of life, not governed by treaties or remedial legislation". Squire v. Capoeman, 351 U.S. 1, 6 (1956). The issue presented by this case is whether remedial legislation exempts from tax petitioner's income from the sale of her horses, thus barring her from claiming the *724 deductions associated with it. The Act provided that each allotment be held in trust for the allottee by the United States for a period of 25 years or longer, during which time the land could not be encumbered or alienated. If, after the expiration of that time, the allottee was found competent to manage his or her own affairs, a fee patent could be issued to the allottee. The purpose of the Act was to preserve the value of the land in trust until the Secretary of the Interior determined that the individual allottee was competent to hold title to the land in fee simple. County of Yakima v. Confederated Tribes and Bands of the Yakima Indian Nation,     U.S.    ; 112 S. Ct. 683 (1992). The basis of the tax exemption in dispute is section 6 of the Act, as amended, 25 U.S.C. sec. 349 (1988), which provides for alienation before the expiration of 25 years, stating that: The Secretary of the Interior may, in his discretion * * * whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and *725 thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed * * * On the basis of this section, the Supreme Court in Squire v. Capoeman, supra at 8, inferred that "until such time as the patent is issued, the allotment shall be free from all taxes, both those in being and those which might in the future be enacted." (Fn. ref. omitted.) This tax exemption extends only to taxes levied on "the allotment", i.e., "to the income derived directly therefrom." Id. at 9. The case of Squire v. Capoeman, supra, concerned the effort to tax capital gains from the sale by the Government of timber on the land of an allottee. The Court stated that the timber constituted the major value of the allottee's land. "Once logged off, the land is of little value. The land no longer serves the purpose for which it was by treaty set aside to his ancestors, and for which it was allotted to him." Id. at 10 (fn. ref. omitted). This Court in Cross v. Commissioner, 83 T.C. 561 (1984), affd. sub nom. Dillon v. United States, 792 F.2d 849 (9th Cir. 1986), *726 adopted a narrow reading of the "derived directly" requirement, holding that it applies only in a situation in which there is exploitation of the land itself, citing Stevens v. Commissioner, 452 F.2d 741 (9th Cir. 1971), affg. in part and revg. in part 54 T.C. 351 (1970), affg. in part 52 T.C. 330 (1969) (holding income from farming and ranching tax exempt); United States v. Daney, 370 F.2d 791 (10th Cir. 1966) (holding income from oil and gas leases tax-exempt); Big Eagle v. United States, 156 Ct. Cl. 665, 300 F.2d 765 (1962) (holding royalties from mineral deposits tax exempt). We found the rationale in Squire v. Capoeman, supra, to be that the property right of the allottee should be protected during the trust period. In this sense, exploitation of the land requires diminution of its value or, at very least, taking something away from it. On the other hand, income derived primarily from labor and capital investments is taxable, though the activity which generated it takes place on *727 allotted land. In Critzer v. United States, 220 Ct. Cl. 43, 597 F.2d 708 (1979), an allottee received taxable income from operation of a motel, restaurant, gift shop, craft shops, and apartments situated on her-allotted land. In Hoptowit v. Commissioner, 78 T.C. 137 (1982), affd. on another issue 709 F.2d 564 (9th Cir. 1983), income received from the operation of a smokeshop situated on allotted land was held to be taxable. The facts of the case before us do not unambiguously fit either paradigm: use of the land is an important factor in petitioner's activities, but petitioner's skill and labor constitute a more important factor. Petitioner has also made some capital improvements to the land. We have never dealt directly with the issue of whether income from the sale of animals grazed on allotted land is taxable. In Holt v. Commissioner, 44 T.C. 686 (1965), affd. 364 F.2d 38 (8th Cir. 1966), we held that income from the sale of cattle raised by an allottee, on unallotted, tribal lands under a grazing permit, was taxable. *728 In Rickard v. Commissioner, 88 T.C. 188 (1987), the parties agreed that profits, if any, from cattle raising on allotted land were tax exempt. However, in Stevens v. Commissioner, 52 T.C. 330, 339 (1969), we said that "we would consider it a close and difficult issue" [1] whether income from the sale or exchange of cattle raised on allotted land is so directly related to the lands as to cause that income to be comparable to the income from the sale of timber discussed in Squire v. Capoeman, 351 U.S. 1 (1956). Thus the issue of whether income from the sale of animals grazed on an allottee's own allotted land was not presented to us in the Stevens case, and we have never been asked to decide it. *729 In the case before us, petitioner purchased horses and their feed off the Reservation. She added to their value primarily through her labor and skill in training and showing them. She conducted her activities on the land but in no way exploited it so as to reduce its value, nor has she taken anything away from her land or relied on any resources peculiar to that land. Even the horses' drinking water was piped in. We conclude that activity of this sort does not give rise to income "derived directly" from the land within the meaning of Squire v. Capoeman, supra.
The United States Court of Appeals for the Tenth Circuit, to which an appeal in this case would lie, held in United States v. Hallam, 304 F.2d 620, 621 (10th Cir. 1962), that income from restricted, allotted Indian lands in the form of "rentals, royalties and the proceeds from the sale of chats" gives rise to tax-exempt income. The court provided no facts about the activities which generated the income or the relative amounts involved, nor was the court called on to decide whether the income was "derived directly" from the land. The mere fact that petitioner's *730 sale of horses constitutes a sale of chattels is not sufficient for us to conclude that our holding in the case before us is inconsistent with United State v. Hallam, supra, given the absence of a factual record in that case. We note that in recent years other courts, in construing the meaning of income "derived directly" from the land, have given weight, as we have here, to whether the income was generated principally from the use of allotted land and its resources or whether it was earned through a combination of labor, the sale of goods produced off the reservation, and improvements constructed on the land. Dillon v. United States, 792 F.2d at 856. The United States Claims Court in Saunooke v. United States, 9 Cl. Ct. 537, 541 (1986), affd. 806 F.2d 1053 (Fed. Cir. 1986), interpreted the holding in Squire v. Capoeman, supra, to mean that tax-exempt income must be derived in such a way as to diminish the value of the land or render it no longer serviceable for the purpose for which allotted, holding: "It is under these *731 circumstances only that an Indian's income is exempt from federal income tax." We are aware of no definition of income "derived directly" from the land within the meaning of Squire v. Capoeman, supra, that would render petitioner's income from training horses tax-exempt. We hold that petitioner's income from the training and sale of horses is taxable income. Consequently, she is entitled to claim deductions for her expenses in earning that income. Decision will be entered under Rule 155. Footnotes
1. This case dealt with the question whether income was taxable when land was acquired partially by allotment, partially by gift, partially by purchase, and partially by being granted a grazing permit. Relying on Rev. Rul. 56-342, 1956-2 C.B. 20↩, respondent did not raise the issue of whether income from raising cattle on allotted land was taxable.