NOEL D. INDUNI AND JANET E. INDUNI,
PETITIONERS *v.* COMMISSIONER
OF INTERNAL REVENUE,
RESPONDENT

Docket No. 8013-90.          Filed May 20, 1992.

*Jon R. Eggleston,* for petitioners.
*Cheryl A. McInroy,* for respondent.

## OPINION

DAWSON, *Judge:* This case was assigned to Special Trial Judge Francis J. Cantrel pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

CANTREL, *Special Trial Judge:* By statutory notice of deficiency dated February 5, 1990, respondent determined the following deficiencies and an addition to tax in petitioners' Federal income taxes:

---

[1] All section references are to the Internal Revenue Code in effect for the years in issue unless otherwise indicated, and all Rule references are to the Tax Court Rules of Practice and Procedure.

| Year | Deficiency | Addition to tax sec. 6653(a)(1) |
|---|---|---|
| 1986 | $3,458 | - - - |
| 1987 | 2,399 | - - - |
| 1988 | 2,842 | $142.10 |

The deficiencies result from respondent's adjustments to mortgage interest and real estate tax deductions claimed on Schedule A of petitioners' 1986, 1987, and 1988 Federal income tax returns, to remove the portion of the expenses allocable to a tax-exempt housing allowance petitioners received in each of those years. In the statutory notice respondent explained that under section 265(1) expenses attributable to tax-exempt income are not deductible. Respondent disallowed the portion of petitioners' mortgage interest expense and real property tax deductions allocable to their living quarters allowance (LQA) in 1987 and 1988, and the entire amount of the deductions in 1986. Further, respondent reduced petitioners' 1988 moving expense deduction by $4,604.32, an amount respondent determined petitioners had been reimbursed.[2] Respondent also determined that petitioners are liable for an addition to tax under section 6653(a)(1) on the entire amount of the deficiency for 1988.

The issues for decision are: (1) Whether a portion of petitioners' mortgage interest and real property tax deductions relating to their principal residence is allocable to a tax-exempt LQA they received and therefore disallowed under section 265; and (2) whether petitioners are liable for the section 6653(a)(1) addition to tax.

## Factual Background

All of the facts have been stipulated and are so found. We incorporate by reference the stipulation of facts and related exhibits.

---

[2]Petitioners did not allege error respecting this adjustment in their petition. In such circumstance Rule 34(b)(4) provides in pertinent part: "Any issue not raised in the assignment of errors shall be deemed to be conceded." See *Jarvis v. Commissioner*, 78 T.C. 646, 658 n.19 (1982). The first mention of this adjustment by petitioners appears in the stipulation of facts wherein, at paragraph 18, they concede that they overstated moving expenses on their 1988 return in the amount of $3,000. Moreover, they have not presented any evidence on the disallowed balance of $1,604.32, nor have they discussed it in their briefs. Therefore, on this record, the Court finds this adjustment is conceded.

Petitioners resided in Colchester, Vermont, at the time the petition was filed. They filed timely joint 1986, 1987, and 1988 Federal income tax returns with the Internal Revenue Service. The term petitioner refers to petitioner husband, Noel D. Induni.

During the years in issue, petitioner was employed by the U.S. Immigration and Naturalization Service (INS). In 1986, 1987, and part of 1988, petitioner's principal place of employment was Dorval Airport, Montreal, Canada. While stationed at Dorval Airport, petitioners lived in a home in Beaconsfield, Canada, which they purchased. Under the terms of petitioner's employment arrangement with the INS, petitioner received an LQA during the years in issue. Such allowance is authorized by 5 U.S.C. section 5923(2) (1980), when Government-owned or rented quarters are not provided for an employee in a foreign area. Section 5923(2) provides that the LQA is for rent, heat, light, fuel, gas, electricity, and water. Petitioner received the following amounts for such purposes:

| Year | LQA |
|------|------|
| 1986 | $9,389.10 |
| 1987 | 9,481.50 |
| 1988 | 1,881.60 |

The parties agree that the amounts received as an LQA are exempt from tax under section 912(1)(C).

The parties also agree that during the years in issue petitioners paid the following amounts for mortgage interest and real property taxes relating to their home in Canada:

| Year | Mortgage interest | Real estate tax |
|------|-------------------|-----------------|
| 1986 | $9,076.50 | $1,973.28 |
| 1987 | 8,663.57 | 2,204.74 |
| 1988 | 3,187.26 | 1,029.33 |

In itemizing their deductions on the Schedules A attached to their 1986, 1987, and 1988 Federal income tax returns, petitioners did not reduce their mortgage interest or real estate tax deductions by any part of the LQA amount which they received.

Based on a ratio of petitioners' LQA to their total housing expenses calculated in the statutory notice, respondent disallowed 70 percent of petitioners' mortgage interest and real estate tax deductions in 1987, and 45 percent in 1988.

Respondent disallowed the entire amount of petitioners' mortgage interest and real property tax deductions for 1986. The record does not contain petitioners' housing expenses for that year.

## *Discussion*

Section 163(a) allows a deduction for all interest paid within the taxable year on indebtedness, including interest paid on a mortgage on a personal residence owned by the taxpayer. Sec. 1.163-1(b), Income Tax Regs. Section 164(a)(1) allows a deduction for real property taxes paid or accrued by a taxpayer.

In the case of civilian officers and employees of the U.S. Government, section 912(1)(C) provides an exemption from taxation for amounts they received as allowances under title II of the Overseas Differentials and Allowances Act.

Section 265(a)(1) (section 265(1) prior to 1987) provides the general rule that no deduction is allowed for an otherwise deductible expense which is allocable to tax-exempt income. According to section 1.265-1(b)(1), Income Tax Regs., tax-exempt income includes any class of income wholly excluded from gross income under subtitle A or under any other provision of law. Petitioners' LQA qualifies as a class of exempt income for purposes of section 265. If an expense or amount is indirectly allocable to both nonexempt and exempt income, a reasonable proportion of the expenses, in light of the facts and circumstances, should be allocated to each. Sec. 1.265-1(c), Income Tax Regs.

Although usually applied to expenses incurred in earning tax-exempt investment income, section 265(a) has been invoked to disallow deductions related to the use of tax-exempt income. This Court has held that the legislative purpose behind section 265 is to prevent taxpayers from reaping a double tax benefit by using deductions attributable to tax-exempt income to offset taxable income. *Manocchio v. Commissioner,* 78 T.C. 989, 997 (1982), affd. on different grounds 710 F.2d 1400 (9th Cir. 1983) (deduction denied pilot for flight training expenses for which he received tax-free reimbursement from the Veterans' Administration); *Rickard v. Commissioner,* 88 T.C. 188, 193 (1987) (losses from farming operations on Indian allotment land were not deductible by tribal

members where income from such operations was exempt from tax).

The Court has not previously considered whether under section 265(a)(1) mortgage interest and real property tax deductions are allocable to a tax-exempt LQA.

Petitioners argue that their mortgage interest and real property tax are not allocable to their tax-exempt LQA, and therefore are not within the scope of section 265(a)(1). They have the burden of proving that respondent's determinations are incorrect. Rule 142(a); *Welch v. Helvering,* 290 U.S. 111 (1933). In determining whether the deductions are allocable to the tax-exempt income, we first consider the nature of the LQA petitioners received, and the relationship it bears to the deductions in issue.

The parties agree that the amount of petitioner's LQA is determined under sections 131 through 134 of the Department of State Standardized Regulations (Government Civilians, Foreign Areas)[3] (Standardized Regs.), as an amount necessary to cover substantially all of an employee's annual costs for rent, heat, light, fuel, gas, electricity, water, and taxes levied by the local government, up to a maximum rate that depends on the employee's grade level, family size, and location of post. Rent is defined in section 131.2 of the Standardized Regs. as the annual cost of suitable, adequate living quarters for an employee and his family. Rent may include other costs such as garage space rent, rental of furniture, insurance, agent's fee, and interest on a loan to finance "key money" paid to a landlord. For employees such as petitioner who purchase a home at their post, section 136 of the Standardized Regs. provides that an amount up to 10 percent of the original purchase price will be considered the annual rate of the employee's estimated expenses for rent.

The record contains a list of the housing costs actually incurred by petitioners for principal, mortgage interest, real estate taxes, and insurance in 1987 and 1988. The record shows that petitioners incurred no heat, electricity, water, or gas expenses in either year; and petitioners have not con-

---

[3]As the Department of State Standardized Regulations (Government Civilians, Foreign Areas) are updated every 2 weeks, they do not appear in the Federal Register. They are available to the public on request. We take judicial notice of them as adjudicative facts under rule 201(b) of the Federal Rules of Evidence.

tended to the contrary. The largest expense in both years was mortgage interest, constituting 64 percent of petitioners' total housing expenses in 1987, and 75 percent in 1988. Both principal and real property taxes comprised a third of their total housing costs in 1987, and less than a quarter in 1988. Therefore, the LQA's petitioners received in 1987 and 1988 were not based on the amounts spent on utilities; rather, the amounts of allowances were derived from the "rent" component. Under the Standardized Regs. petitioners received an amount in lieu of rent equal to 10 percent of the purchase price of their home. From the record, we surmise that the majority, if not all, of petitioners' 1986 LQA was also derived from the housing cost component of the allowance rather than from utility expenses.

Had petitioners rented their residence, the amount of rent they would have paid would be directly allocable to their LQA. Instead, petitioners bought a home in Canada, thereby incurring and paying otherwise deductible mortgage interest and real property tax in each year in issue in the amounts set out herein. These types of expenses are not explicitly addressed in the provisions of the Standardized Regs. governing the calculation of LQA's for homeowner-employees. Rather, the Standardized Regs. indicate an amount payable in lieu of rent, without listing the specific costs associated with purchasing and maintaining an employee's own home.

By reference to the Standardized Regs. section covering rent and by common-sense definition, "living quarters allowance" denotes the amount necessary to cover substantially all costs associated with maintaining housing. For most taxpayers who are homeowners, mortgage interest and real property taxes constitute the majority of their housing expenses. Indeed, such was the case for petitioners during the years in issue. In our view, petitioners' mortgage interest and real property taxes are the housing expenses intended to be covered by the rent component of the LQA. As such, the deductions are indirectly allocable to a class of tax-exempt income within the meaning of section 1.265-1(c), Income Tax Regs.

To permit petitioners a deduction for expenses directly or indirectly allocable to tax-exempt income is to bestow upon them a double tax benefit. Petitioners have failed to point to express exemptive language in the Code or elsewhere entitling

them to such benefit. See *Rickard v. Commissioner,* 88 T.C. 188, 192 (1987). On the contrary, the Code, its amendments and legislative history, and even respondent's ruling positions[4] are adverse to petitioners' position.

In Rev. Rul. 83-3, 1983-1 C.B. 72, respondent attempted to reverse a long-standing position by ruling that section 265 precluded a minister from taking deductions for mortgage interest and real estate taxes on his residence to the extent that such expenditures were allocable to a combined rental and utility allowance which was excludable from the minister's income under section 107. The ruling provided a formula whereby the amount of itemized deductions otherwise allowable were decreased by the percentage amount that the parsonage allowance bore to the minister's total housing expenses. The ruling also disallowed deductions for education expenses incurred by a veteran to the extent reimbursed by the Veterans' Administration. Rev. Rul. 83-3, *supra,* revoked both Rev. Rul. 62-212, 1962-2 C.B. 41, and Rev. Rul. 62-213, 1962-2 C.B. 59, which permitted full deductions for the above-mentioned expenses of ministers and veterans. Respondent reasoned in Rev. Rul. 83-3, *supra,* that permitting a full deduction for expenses incurred for the purposes for which tax-exempt income is received creates a double benefit not allowed under section 265, as interpreted by the courts.

It is important to note that if a minister owned and occupied a home before January 3, 1983 (or had a contract to purchase a home before January 3, 1983, and subsequently owned and occupied that home), Rev. Rul. 83-3, *supra,* would not be applied to that minister until the earlier of the date on which the minister no longer occupied that home or January 1, 1985. The effective date was further delayed to 1986, by section 1052 of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 1045, and then to 1987, by Rev. Rul. 85-96, 1985-2 C.B. 87.

In IRS News Release IR-85-64 (July 2, 1985), respondent announced that the Internal Revenue Service was studying the question of whether members of the uniformed services were entitled to take deductions for mortgage interest or property

---

[4]Revenue rulings do not have the force of law and are merely statements of the Commissioner's litigating and administrative position. *Dixon v. United States,* 381 U.S. 68, 73 (1965).

taxes to the extent they receive tax-free housing allowances from the Federal Government. Respondent indicated that any determination on this issue adversely affecting members of the uniformed services would not be applied to mortgage interest and property taxes paid before 1987. For purposes of this rule, respondent stated that uniformed services includes all branches of the armed forces, the National Oceanic and Atmospheric Administration, and the Public Health Service. Eligible members of such services were entitled to receive tax-free housing and subsistence allowances if they did not reside on a Federal base.

In 1986, Congress added section 265(a)(6) which provides that no deduction shall be denied for "interest on a mortgage on, or real property taxes on, the home of the taxpayer by reason of the receipt of an amount as—(A) a military housing allowance, or (B) a parsonage allowance excludable from gross income under section 107." This latter section was added by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 144, 100 Stat. 2085, 2121. It applies to taxable years beginning before, on, or after December 31, 1986. Amended returns may not be filed for taxable years that are otherwise closed. S. Rept. 93-313 (1986), 1986-3 C.B. (Vol. 3) 60, 61.

The legislative history of the amendment clarifies any doubt as to Congress' specific intent. The House committee report states that the provision overrules the application of Rev. Rul. 83-3, *supra,* to ministers, and precludes its application to military housing allowances. H. Rept. 99-426, at 135-136 (1985), 1986-3 C.B. (Vol. 2) 135-136. The Senate committee report defines military service to mean the Army, Navy, Air Force, Marine Corps, Coast Guard, National Oceanic and Atmospheric Administration, and Public Health Service. S. Rept. 99-313, *supra,* 1986-3 C.B. (Vol. 3) at 60-61. See also H. Conf. Rept. 99-841, 1986-3 C.B. (Vol. 4) at 23. The Joint Committee explanation provides that Congress concluded that it was appropriate to continue the long-standing tax treatment with respect to deductions for mortgage interest and real property taxes claimed by ministers and military personnel who receive tax-free housing allowances. Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986 at 53-54 (J. Comm. Print 1987).

We think the legislative history is straightforward. With Rev. Rul. 83-3, *supra,* respondent proposed to revoke her 1962 ruling permitting ministers receiving tax-exempt parsonage allowance deductions for mortgage interest and real property tax, thus changing the long-standing treatment accorded ministers under respondent's 1962 ruling. The effective date of the 1983 ruling was postponed while the issue was further considered. Then in 1986 Congress enacted section 265(a)(6), in effect carving out a statutory exception for two types of taxpayers, ministers and military personnel, whose mortgage interest expenses and real property tax deductions are not to be denied under section 265(a) by reason of receipt of a tax-exempt living allowance. If Congress had intended the exception to extend to LQA's of civilian employees of the U.S. Government, it would have done so in this amendment.

Petitioners' claimed deductions fall squarely within the purview of section 265(a)(1). The Code should not be interpreted to allow the practical equivalence of a double tax benefit, absent a clear declaration of congressional intent. *United States v. Skelly Oil Co.,* 394 U.S. 678, 684 (1969). Congress has made its intent clear in section 265(a)(6) that such double tax benefit inures only to certain taxpayers. Petitioner is not within the special class of those excepted by section 265(a)(6) from the application of section 265(a)(1). Therefore, petitioners' mortgage interest and real property tax indirectly allocable to their tax-exempt LQA are not deductible from their taxable income.

In each of the years in issue, petitioners' mortgage interest and real property tax exceed the amount of tax-exempt income they received. Consequently, their mortgage interest and real property tax deductions are indirectly allocable to both a class of exempt and nonexempt income. According to section 1.265-1(c), Income Tax Regs., a reasonable proportion of the expenses in light of the facts and circumstances should be allocated to the taxable and tax-exempt income.

Respondent reduced petitioners' mortgage interest and real estate tax deductions in 1987 and 1988 by a percentage bearing the same ratio as their LQA bears to their total living expenses in those years. Petitioners have the burden of proving that respondent's allocations are in error, and they have presented no evidence to contradict such allocations. See

*Metzger v. Commissioner,* 88 T.C. 834, 860 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988) (deduction disallowed for portion of legal expenses allocable to tax-exempt portion of settlement). Accordingly, we sustain respondent's determinations with respect to 1987 and 1988.

Respondent disallowed the entire amount of mortgage interest and real estate tax deductions claimed by petitioners in 1986. Section 1.265-1(c), Income Tax Regs., provides for a reasonable allocation of the portion of petitioners' expenses indirectly allocable to their LQA. Petitioners have not presented any evidence regarding their other living expenses in 1986. The only living expenses appearing in the record are the stipulated mortgage interest and real estate tax amounts. The sum of these will constitute petitioners' total living expenses for 1986. Petitioners' mortgage interest and real estate tax deductions shall be reduced by 84.9 percent, the ratio that their 1986 LQA bears to their mortgage interest and real property tax in 1986.

The final issue for decision is whether petitioners are liable for the section 6653(a)(1) addition to tax. Section 6653(a)(1) imposes an addition to the tax equal to 5 percent of the underpayment if any part of any underpayment is due to negligence or intentional disregard of the rules or regulations. Negligence is defined as lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. *Neely v. Commissioner,* 85 T.C. 934, 947-948 (1985). Respondent's determination of negligence is presumed to be correct, and petitioners bear the burden of proving that the addition does not apply. Rule 142(a); *Matthews v. Commissioner,* 92 T.C. 351, 362 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990); *Luman v. Commissioner,* 79 T.C. 846, 860-861 (1982).

In their petition, petitioners assigned error to respondent's determination that section 6653(a)(1) was applicable. They failed, however, to allege any facts in the petition respecting this issue, or to present any evidence to rebut respondent's determination with respect to the addition to tax. We note that petitioners address the issue for the first time in an abbreviated fashion in a footnote contained in their reply brief. There they explain that the moving expense overstatement in 1988 was due to their mistaken use of the incorrect form. The explanation is insufficient to carry their burden of proof. We

therefore sustain respondent's determination with respect to the section 6653(a)(1) addition to tax on petitioners' 1988 underpayment.

We have considered petitioners' other arguments and find them to be without merit.

To reflect concessions by petitioners and our conclusions on the disputed issues,

*Decision will be entered under Rule 155.*