Lawton K. STROUD and Nancy
B. Stroud, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 2:94–2546–18.

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 1, 1995.

Stephen P. Groves, John C. Von Lehe, Shawn M. Flanagan, Charleston, SC, for plaintiffs.

Steven M. Webster, Washington, DC, for defendant.

## ORDER

NORTON, District Judge.

This action is before the court on cross-motions for summary judgment. Plaintiffs brought this tax refund action and assert that they are entitled to deduct as business losses certain payments to the United States which arose because Plaintiff Nancy Stroud refused to perform her professional service commitment under the National Health Services Corps Scholarship Program. For the reasons stated below, this court denies Plaintiffs' Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment.

### I. FACTS

In 1978, the National Health Services Corps (NHSC) awarded 2,500 scholarships to qualified medical students pursuant to the NHSC Scholarship Program, which is codified at 42 U.S.C. § 254. The scholarship program provides tuition, fees, and a monthly support stipend in exchange for the recipient's promise to provide medical services in a Health Manpower Shortage Area (HMSA), and was instituted to address the "geographic maldistribution of health manpower."

H.R.Rep. No. 266, 94th Cong., 2d Sess. 22, *reprinted in* 1976 U.S.C.C.A.N. 4947, 4964.

On June 12, 1978, Plaintiff Nancy Stroud ("Dr. Stroud") applied for an NHSC scholarship for the 1978–79 academic year. Along with the application, she executed a two-page written scholarship contract with the United States. The contract provided that if Stroud failed to complete the period of obligated service under the contract, the United States would be entitled to recover an amount equal to three times the scholarship funds awarded, plus interest, as determined by the formula stated in the contract and codified at § 254o (b)(1)(A). Section B of the Contract provided that the United States had the exclusive discretion to assign Stroud to any designated HMSA.

Dr. Stroud ultimately received $68,594 from the United States during her four years of medical education. She graduated from Tufts Medical School in 1982 and applied for and received deferments of her service commitment until June 30, 1986, which enabled her to complete her OB/GYN residency in Charleston, South Carolina.

Near the completion of her residency, by letter dated May 28, 1986, Dr. Stroud informed the NHSC that she would not perform her contractually mandated service obligation in an HMSA.[1] The United States placed her in default as of July 1, 1986. In accordance with the statutory terms, she was obligated to pay the United States the following:

| | |
|---|---|
| Scholarship received multiplied by three: | $205,782 |
| Imputed interest on the amounts received between 1978 and 1982 through July 1, 1986 multiplied by three: | 191,750 |
| Total obligation as of July 1, 1986 | $397,532 |

On November 25, 1987, Dr. Stroud entered into a Repayment Agreement with the Unit-

---

1. Dr. Stroud contends that during her residency she tried repeatedly to locate a position in South Carolina which would fulfill her service obligation, but that there were no openings for her specialty in South Carolina. When the Public Health Service (PHS) informed her that it would be unable to offer her a position in South Car-

olina, she made a business decision to join a private medical firm in North Charleston, South Carolina, rather than fulfill her service obligation. It is from her income as a private physician that Dr. Stroud seeks to deduct the payments at issue.

ed States, and began to pay her obligation during 1988. Dr. Stroud continued to pay her breach obligation, plus interest on that obligation, during the years relevant to this action, 1989, 1990, and 1991.

On her federal income tax returns for 1989 and 1990,[2] Dr. Stroud deducted the amounts paid towards the service breach obligation and related interest as an unreimbursed business expense. On her 1991 federal income tax return, Dr. Stroud deducted the amount paid as a business expense of her medical practice partnership. Plaintiffs' payments, deductions, and interest are as follows:

|      | Amt. Paid | Deduction | Fed. Inc. Tax |
| ---- | --------- | --------- | ------------- |
| 1989 | $57,000   | 54,133    | 6,758         |
| 1990 | $77,000   | 71,444    | 18,640        |
| 1991 | $79,000   | 79,000    | 21,982        |

The United States disallowed the breach obligation payment deductions and interest deductions on August 27, 1992. Plaintiffs then paid the additional assessed federal income tax, plus the related interest on the tax, for each year. Plaintiffs were also assessed an accuracy penalty with respect to the years 1989 and 1990 in the amounts of $1,351.60 and $3,728, respectively, for a total payment of $61,858.30.

Plaintiffs filed claims for refund with the Internal Revenue Service, seeking to deduct 82.7% of the breach obligation payments, including the interest, for the years 1989, 1990, and 1991. This percentage was derived by treating only the scholarship amount as non-deductible:

$$\text{(obligation − scholarship)/obligation} = \text{percentage}$$
$$(397,532 − 68,594)/397,532 = 82.7\%$$

The claims for refund were denied by the Internal Revenue Service. Plaintiffs then filed the instant action, seeking a refund of $54,687.60, representing 82.7% of all payments made, plus interest and costs.

2. Plaintiffs filed a joint income tax return for the years at issue.

3. Section 162 allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business ..." I.R.C. § 162(a) (1988).

4. Section 165 provides,
   (a) General rule.—There shall be allowed as a deduction any loss sustained during the tax-

## II. SUMMARY JUDGMENT STANDARD

■ A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate when there exists no genuine issue as to any material fact and a decision may be rendered as a matter of law. Fed.R.Civ.P. 56. The party moving for summary judgment has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The facts must be viewed in the light most favorable to the non-moving party so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion. *Adickes,* at 157, 90 S.Ct. at 1608; *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Nevertheless, the motion must be granted if the Court is satisfied that no real factual controversy is present, so that the remedy can serve "its salutary purpose in avoiding a useless, expensive, and time consuming trial where there is no genuine, material fact issue to be tried." *Lyons v. Board of Educ.,* 523 F.2d 340, 347 (8th Cir.1975).

## III. ANALYSIS

### A. DEDUCTIBILITY OF BREACH PAYMENTS

■ Plaintiffs argue that payments made as a result of Dr. Stroud's scholarship commitment breach are deductible either as business expenses under § 162,[3] or as business losses under § 165,[4] and that therefore they are entitled to a refund of taxes and interest paid as well as of penalties assessed.

able year and not compensated for by insurance or otherwise.
. . .
   (c) Limitation on losses of individuals.—In the case of an individual, the deduction under subsection (a) shall be limited to—
   (1) losses incurred in a trade or business;
   (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; ...
I.R.C. § 165(a) (1988).

Defendant contends, first, that Plaintiffs are not entitled to a deduction under either of these sections. Second, Defendant asserts that even if Plaintiffs' payments for breaching the scholarship contract qualify as deductions under either of those sections, the deductions are disallowed by other provisions of the code. Alternatively, the deductions are prohibited by § 265(a)(1) as directly allocable to tax-exempt income,[5] or they are prohibited by § 162(f) as a fine or penalty paid to the government.[6] Finally, Defendant argues that Plaintiffs are not entitled to a refund of interest paid, nor have they shown that the penalties were improperly assessed.

Plaintiffs assert that they are entitled to a deduction under either § 162 or § 165. Deductions are provided by legislative grace, and the taxpayer has the burden of proof that a particular provision authorizes a deduction. *Deputy v. DuPont*, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416 (1940); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934). As authority for a deduction, Plaintiffs cite Revenue Ruling 67–48. In that 1967 ruling, the Internal Revenue Service determined that an amount paid by a taxpayer as liquidated damages to a former employer for breach of an employment contract is deductible under § 165(c)(1). The ruling stated, "Since the amount of liquidated damages paid by the taxpayer to his employer in this case is attributable to compensation received for services rendered, such amount qualifies as a business loss under section 165(c)(1) of the Code." Rev.Rul. 67–48, 1967–1 C.B. 50.

Defendant contends that Revenue Ruling 67–48 is not applicable, both because the facts are distinguishable and because the NHSC scholarship program is a creature of statute which must be analyzed in terms of statutory construction rather than as a contract. First, the United States points out that this case does not concern an employer-employee relationship, because Dr. Stroud was never employed by the United States. She received a scholarship from the NHSC, but breached her contract before ever rendering the agreed upon services. Furthermore, Dr. Stroud's scholarship agreement and the provision for liability upon breach are to be governed by statutory standards rather than contract principles. *United States v. Vanhorn*, 20 F.3d 104, 112 (4th Cir.1994) ("We agree with the circuit courts of appeal and the numerous district courts which have held that the relationship between the NHSC scholar and the Government is statutory and not contractual, and that ordinary contract principles do not apply to the agreements governing that relationship.")[7] Therefore, the applicability of Revenue Ruling 67–48 to the breach of an NHSC scholarship is questionable at best.

However, General Counsel Memorandum 39336 [hereinafter GCM 39336] is clearly on point. This memorandum addresses the issue of whether a taxpayer is entitled to a deduction for damages paid to the United States as a result of breaching an NHSC scholarship contract, and finds that the payments generally qualify as business losses under § 165:

> Because the amount paid as liquidated damages for breach of an employment contract is attributable to compensation received for services, such amount qualifies as a business loss for which a deduction generally would be allowed under section 165.

Gen.Couns.Mem. 39336 (February 5, 1985). In a footnote, the General Counsel states that, "For purposes of this memorandum, we are assuming that the amount paid as liquidated damages is deductible under section

---

**5.** Section 265(a)(1) provides that no deduction shall be allowed for any amount otherwise allowable as a deduction which is "allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from [taxes] ..." I.R.C. § 265(a)(1).

**6.** Section 162(f) states, "No deduction shall be allowed under subsection (a) for any fine or similar penalty paid to a government for the violation of any law." I.R.C. § 162(f) (1988).

**7.** *See also United States v. Arron*, 954 F.2d 249, 251 (5th Cir.1992); *United States v. Melendez*, 944 F.2d 216, 219 (5th Cir.1991); *United States v. Hatcher*, 922 F.2d 1402, 1406 (9th Cir.1991).

165 rather than section 162." GCM 39336, n. 7.

GCM 39336 also finds that, because the damages are paid in lieu of services that the taxpayer promised to perform in return for tax-exempt scholarship funds, the payments are nondeductible pursuant to § 265(1). GCM 39336, at 6. Because this court agrees that the payments at issue are nondeductible as directly allocable to tax-exempt income, it declines to decide whether the payments are otherwise deductible under § 162 or § 165.[8]

Plaintiffs' payments to the United States as a result of Dr. Stroud's breach of her scholarship are allocable to that scholarship, which is tax-exempt income. The Treasury Regulation to § 265–1 states,

(1) No amount shall be allowed as a deduction under any provision of the Code for any expense or amount which is otherwise allowable as a deduction and which is allocable to a class or classes of exempt income other than a class or classes of exempt interest income.

Treas.Reg. § 1.265–1(a).[9]

■ The scholarship funds Dr. Stroud received were exempt from income under I.R.C. § 117. As noted in GCM 39336,

Although education grants generally are not excludable from gross income under section 117 if they represent compensation for future services, see Treas.Reg. section 1.117–4(c), special legislation provided for the years in issue that amounts received as scholarships under the Armed Forces Health Professions Scholarship Program, the Public Health Services Program, and similar programs, were required to be treated as scholarships under section 117 of the Code without regard to whether a

period of service was required of the recipient as a condition of receiving the payments.

GCM 39336 (citing Pub.L. No. 93–483, 1974–2 C.B. 446, (as amended by Pub.L. No. 96–167, 1980–1 C.B. 483, 485.)) In determining whether deductions are allocable to tax-exempt income, this court must consider the nature of the tax-exempt income that Plaintiffs received, and the relationship it bears to the deductions at issue. *Induni v. Commissioner of Internal Revenue*, 98 T.C. 618, 622, 1992 WL 105923 (1992), *aff'd*, 990 F.2d 53 (2d Cir.1993).

The deductions at issue are clearly allocable to Plaintiffs' scholarship income. Dr. Stroud's contract with the United States specified that she was obligated to perform medical services in a designated area in return for the scholarship funds. The contract further specified that, should she breach this obligation, she would be liable for statutory damages as set forth by 42 U.S.C. § 254o. The deductions are the payments Dr. Stroud owes the United States by virtue of this very provision. The nature of the tax-exempt income is Dr. Stroud's scholarship; the relationship it bears it bears to the deductions is one of direct causation. The payments could hardly be more "allocable" to the scholarship funds—they would not be owed without a breach of the scholarship agreement.

Plaintiffs argue that the payments made pursuant to Dr. Stroud's breach obligation are not directly allocable, but *indirectly* allocable to the scholarship, and that therefore only a reasonable proportion should be deemed nondeductible. Subsection (c) of Treasury Regulation § 1.265–1 states,

Expenses and amounts otherwise allowable which are directly allocable to any

---

**8.** This court notes that Plaintiffs face two additional hurdles with respect to deductibility under § 162. Not only must Plaintiffs show that the payments were ordinary and necessary business expenses, but they must show that § 162(f) does not apply. That subsection disallows a deduction under subsection (a) for any fine or similar penalty paid to a government for the violation of any law. I.R.C. § 162(f). A recent tax court decision found that NHSC scholarship breach payments are not deductible because they qualify as a fine or penalty under § 162(f), rather than being liquidated damages. *See Hawronsky v. Commissioner of Internal Revenue*, 105 T.C. No.

8, 1995 WL 467290 (1995). Because this court holds that the payments are nondeductible pursuant to § 265(a)(1), we do not decide whether the payments qualify as a fine or penalty under § 162(f).

**9.** For taxable years ending prior to 1987, § 265(a)(1) was designated as § 265(1). *See* 26 U.S.C. § 265(1) (1982); Tax Reform Act of 1986, Pub.L. No. 99–514, § 902(d), 100 Stat. 2085, 2382. The two provisions are substantially the same.

class or classes of exempt income shall be allocated thereto; and expenses and amounts directly allocable to any class or classes of nonexempt income shall be allocated thereto. If an expense or amount otherwise allowable is indirectly allocable to both a class of nonexempt income and a class of exempt income, a reasonable proportion thereof determined in the light of all the facts and circumstances in each case shall be allocated to each.

Treas.Reg. § 1.265–1. Plaintiffs contend that the payments at issue are indirectly allocable to both nonexempt income (Dr. Stroud's taxable income earned in private practice), and exempt income (the scholarship funds), and seek to analogize their case to that of the taxpayer in *Induni*, 98 T.C. at 618.

Plaintiffs' argument is not persuasive. In *Induni*, the Tax Court found that a portion of the taxpayer's mortgage interest and real property tax deductions relating to their principle residence is indirectly allocable to a tax-exempt living quarters allowance (LQA) they received, and therefore disallowed by § 265. *Id.* at 623. Induni was employed by the United States Immigration and Naturalization Service (INS), and received an LQA pursuant to a statute authorizing an employee in a foreign area to receive such an allowance when government-owned or rented quarters are not provided. *Id.* at 622 (*citing* 5 U.S.C. § 5923(2) (1980)). Induni's LQA was for payment of his rent, heat, light, fuel, gas, electricity, and water. *Id.* at 622.

Rather than renting a home, Induni bought a home, and received an LQA equal to ten percent of the purchase price. The court found that, because the LQA was intended to subsidize housing costs, and the taxpayer's primary housing costs were mortgage interest and real property taxes, the deductions for those payments were indirectly allocable to the tax-exempt LQA:

> In our view, petitioners' mortgage interest and real property taxes are the housing expenses intended to be covered by the rent component of the LQA. As such, the

deductions are indirectly allocable to a class of tax-exempt income within the meaning of section 1.265–1(c), Income Tax Regs.

*Id.* at 623.

Thus in *Induni*, the payments for which the taxpayer took a deduction were not exactly the expenses that the LQA was intended to cover. Instead, the court looked at the purpose of the LQA, and found that the taxpayer's mortgage interest and real property taxes fit within that broader purpose. So the payments in *Induni* were *indirectly* allocable to the LQA.

Here, this court need not make an analogy to find that the Plaintiffs' payments are allocable to Dr. Stroud's scholarship. Plaintiffs' liability payments are in exchange for the scholarship breach. Induni's LQA was made in exchange for rent and utilities, but because Induni incurred other costs instead, the LQA was allocated to those other costs. Here, the deductions are not indirectly allocable to the scholarship, but directly allocable to it. Furthermore, because the full amount of Plaintiffs' liability is directly allocable to the tax-exempt scholarship, "the entire deduction is disallowed without regard to the amount of exempt income actually received." GCM 39336.

The legislative history behind the NHSC scholarship program affirms that the liability payments were not intended to be deductible.[10] When the program was started in 1972, a participant's obligation upon breach of her service commitment was equal to the costs of tuition and other education expenses and scholarship payments paid by the program, plus interest at the maximum prevailing rate. 42 U.S.C. § 234(f)(1) (1970). In 1977, Congress tripled the breach amount, with no indication that the liability payments would now be deductible. 42 U.S.C. § 254o (1988). Rather, Congress made clear that the program was not a free ride for medical students:

> The Committee wishes to emphasize in the strongest possible terms that it does not

10. As noted previously, courts have found that principles of statutory construction rather than contract principles apply to interpretation of the NHSC scholarship program. *See Vanhorn* 20 F.3d at 110; *see also* sources cited *supra* note 5.

view the National Health Service Corps scholarship program as a mechanism solely intended to subsidize health professional education.

Senate Report 94–887, 94th Cong. 1st Sess. 201 (1975). Congress further showed that the treble damages must be paid in full by specifically providing that the breach obligation is not dischargeable in bankruptcy, except in cases where the nondischarge of the breach obligation would be unconscionable. 42 U.S.C. § 254o (d)(3)(A). Such evidence suggests that Congress tripled the penalty amount as a deterrent to participants' breach of their service commitment, and undermines the argument that Congress may have intended the obligation to be deductible.

The United States also argues that allowing a deduction of these payments would violate the NHSC Scholarship Act, and that the payments are a nondeductible penalty under § 162(f). Because this court finds that the deductions are disallowed by § 265, it makes no finding as to these contentions.

## B. INTEREST

█ The parties disagree as to the deductibility of the interest that Plaintiffs have paid on their liability payments. Plaintiffs argue that the interest is deductible as a business expense pursuant to § 162, which allows a deduction for "all the ordinary and necessary expenses paid or incurred ... in carrying on any trade or business." I.R.C. § 162(a). Defendant argues that the interest is personal interest, and is not deductible. The Plaintiffs carry the burden of showing that they are entitled to a deduction of their interest payments. *DuPont*, 308 U.S. at 493, 60 S.Ct. at 366; *New Colonial Ice Co.*, 292 U.S. at 440, 54 S.Ct. at 790.

Plaintiffs offer no authority for the proposition that their interest payments were ordinary and necessary expenses incurred in carrying on a trade or business. Plaintiffs cite Revenue Ruling 67–48 for support, but that ruling does not even consider the deductibility of interest. Rev.Rul. 67–48, 1967–1 C.B. 50. Plaintiffs also cite GCM 39336, which finds that the interest payments are *not* deductible.

GCM 39336 considers the deductibility of interest paid on a NHSC liability obligation under § 162 or § 163. Section 163(a) allows a deduction for interest paid or accrued on indebtedness. Section 163(h)(2), however, disallows an individual's deduction of "personal interest," which is defined as including all interest other than:

> (A) interest paid or accrued on indebtedness properly allocable to a trade or business (other than the trade or business of performing services as an employee),

> .    .    .    .    .

I.R.C. § 163(h)(2)(A).

The memorandum finds that the interest is not deductible under § 163 because no indebtedness arose upon the taxpayer's receipt of the scholarship funds. Therefore, "[N]o portion of the damages paid by the taxpayer upon the breach of the scholarship contract can be characterized as interest, which is the compensation for the use or forbearance of money." GCM 39336. Plaintiffs have not made any showing that their case is distinguishable. Therefore, this court finds that the interest on the breach payments is not deductible as a business expense.

## C. PENALTIES

█ Plaintiffs also argue that they are entitled to a refund of penalties assessed by the IRS. For the 1989 and 1990 tax years, Plaintiffs were assessed an accuracy-related penalty, which represents a single twenty percent penalty on the portion of an underpayment attributable to a taxpayer's misconduct. I.R.C. § 6662(a). The examining agent found that Plaintiffs' misconduct was "negligence or disregard of rules or regulations." I.R.C. § 6662(b)(1). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and "disregard" includes any careless, reckless, or intentional disregard of rules and regulations. I.R.C. § 6662(c). If there was reasonable cause for an underpayment, and the taxpayer acted in good faith, then no penalty should be imposed. I.R.C. § 6664(c)(1).

 Plaintiffs have failed to show that their conduct was not negligent. The I.R.S.'s determination in a negligence case is presumptively correct, and the taxpayer has the burden of disproving negligence by a preponderance of the evidence. *Vaira v. Commissioner of Internal Revenue,* 444 F.2d 770, 777 (3rd Cir.1971). The only evidence Plaintiffs present in support of the contention that they had a reasonable basis for understating their income tax, is a letter written by the Plaintiffs' attorney on May 11, 1988. This letter allegedly states that, in the attorney's opinion, the payments to the government are deductible. (Pls.' Attach.Form 1040x, p. 20).

 While hiring an attorney or accountant does not insulate a taxpayer from negligence penalties, good faith reliance on the advice of an attorney is a defense to underpayment of income tax. *United States v. Boyle,* 469 U.S. 241, 251, 105 S.Ct. 687, 693, 83 L.Ed.2d 622 (1985). The United States correctly points out that Plaintiffs have not produced the letter they claim to have relied upon in underpaying their income, so that letter is not part of the record before this court. Furthermore, Plaintiffs have offered no evidence as to their reliance on the advice of their attorney. This case is thus distinguishable from *Betson v. Commissioner of Internal Revenue Service,* 802 F.2d 365 (9th Cir.1986), in which the court reversed a negligence penalty because "the record indicates that the taxpayer relied in good faith on the substantive advice of his accountant." *Id.* at 372. Plaintiffs have failed to carry their burden of proof that the I.R.S.'s finding of negligence was erroneous. Therefore, this court holds that Plaintiffs are not entitled to a refund for the tax penalties paid in 1989 and 1990.

## CONCLUSION

For the reasons stated above, the court finds that Plaintiffs are not entitled to a refund of the payments they made pursuant to Dr. Stroud's breach of her NHSC scholarship contract, because those payments are not deductible. Plaintiffs are not entitled to a refund of the interest paid on that obligation, nor are they entitled to a refund of the penalties which have been assessed against them.

It is therefore,

**ORDERED,** that Plaintiffs' Motion for Summary Judgment be **DENIED,**

**ORDERED,** that Defendant's Motion for Summary Judgment be **GRANTED.**

**AND IT IS SO ORDERED.**