**BORAL GAS OF AMERICAN SAMOA, INC., Petitioner,**

**v.**

**FAAFETAI IAULUALO, ACTING TREASURER OF AMERICAN SAMOA, Respondent.**

High Court of American Samoa
Trial Division

CA No. 87-01

October 3, 2002

Before RICHMOND, Associate Justice, LOGOAI, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Petitioner, Daniel R. King
For Respondent, Benton H. Walton, IV, Assistant Attorney General, and Henry W. Kappel, Legal Counsel to the Governor

## ORDER GRANTING PARTIAL SUMMARY JUDGMENTS TO PLAINTIFF AND DEFENDANT

Petitioner Boral Gas of American Samoa, Inc. ("Boral") brought this action to redetermine tax deficiencies, penalties, and interest assessed by respondent Faafetai Iaulualo ("Iaulualo"), as the Acting Treasurer of American Samoa and Commissioner of Internal Revenue under the Samoan Income Tax Act ("SITA"), for Boral's 1994, 1996, 1997, 1998, and 1999 tax years, respectively ending June 30, 1995, 1997, 1998, 1999, 2000. Both parties filed motions for summary judgment. The motions were heard on April 29, 2002, with all counsel present.

### Jurisdiction

██ This court has exclusive, original jurisdiction over all judicial proceedings in American Samoa, both criminal and civil, with respect to SITA. A.S.C.A. § 11.0408. Actions pertaining to improperly assessed tax deficiencies and penalties are subject to the statutory requirements applicable to such actions brought in a Tax Court under the United States internal revenue code ("IRC"). *Klauk v. Am. Samoa Gov't*, 13 A.S.R.2d 52, 55 n.2 (Trial Div. 1989) (the High Court sits as a Tax Court in deficiency proceedings); *see also* A.S.C.A. § 11.0401; 26 U.S.C.A. §§ 7441-7478 (2002). In this case, the court's jurisdiction properly attached when a notice of deficiency was mailed to Boral, the taxpayer, and it filed this action contesting the deficiency within 90 days. *See Stephens v. Comm'r of Revenue*, 15 A.S.R.2d 87, 88 (Trial Div. 1990) (citing 26

U.S.C.A. § 6213(a)).

## Summary Judgment Standard

■ Summary judgment is appropriate when there is "no genuine issue as to any material fact." T.C.R.C.P. 56(c); *Plaza Dep't Store v. Dunchnak*, 26 A.S.R.2d 82, 83 (Trial Div. 1994). The pleadings and supporting documents are viewed in the light most favorable to the non-moving party. *Plaza Dep't Store*, 26 A.S.R.2d at 83. Furthermore, as in this case, "disputed 'legal questions . . . present nothing for trial and [are] appropriately resolved on a motion for summary judgment.'" *Flair Broad. Corp. v. Powers*, 733 F. Supp. 179, 184 (S.D.N.Y. 1990) (quoting *Holland Indus. v. Adamar of New Jersey, Inc.*, 550 F. Supp. 646, 648 (S.D.N.Y. 1982)).

## Discussion

### A. Statute of Limitations Bar on Tax Years 1994 and 1996

■ Boral points out, and Iaulualo concedes, that the assessment of any additional income taxes, penalties, or interest for Boral's 1994 and 1996 tax years, ending June 30, 1995, and June 30, 1997, are barred by the statute of limitations. The limitation period is three years after the tax return is filed. SITA § 6501(a). Boral's tax returns for these two tax years were filed more than three years before Iaulualo asserted the assessed tax deficiencies, penalties, and interest for those tax years. Therefore, Boral is clearly entitled to summary judgment for these two tax years.

### B. Undisputed Calculations

Boral's calculations on the taxes owed for the remaining tax years in question, 1997, 1998, and 1999, ending June 30, 1998, 1999, and 2000, and Iaulualo's calculations on the assessed tax deficiencies, penalties, and interest owed for the same years are undisputed. There is no genuine issue of material fact regarding the essential legal issue: whether the applicable corporate income tax rates are set forth in § 11(b) of the United States income tax law ("IRC") through adoption by reference in A.S.C.A. § 11.0403(a), or in A.S.C.A. § 11.0533. The action is therefore ripe for summary judgment with respect to the corporate income tax rate issue.

### C. Applicable Tax Rates

In 1963, American Samoa adopted by reference the IRC of 1954, as it was then in effect and may be later modified, as the income tax law of the

territory. A.S.C.A. § 11.0403(a). Excepted were: (1) IRC provisions clearly inapplicable or incompatible with the intent of § 11.0403(a), *id.,* and (2) amendments enacted by the Legislature of American Samoa. A.S.C.A. § 11.0501.

IRC § 11(b) sets forth the IRC income tax rates in general on corporations. This section is included in IRC's subtitle A, which was specifically adopted as part of the SITA. A.S.C.A. § 11.0403(a). The corporate tax rates in IRC § 11(b) were substantially reduced by the federal Tax Reform Act of 1986, effective for tax years beginning on or after July 1, 1987. U.S. Pub. L. No. 99-514 (effective Oct. 22, 1986). Initially, the reduced tax rates automatically became the effective tax rates in the territory under A.S.C.A. § 11.0403(a). *See, e.g., Patu v. Westervelt,* 4 A.S.R. 812, 819-822 (Trial Div. 1974) (acknowledging amendment to Tax Court rules contained in the IRC as applicable in a High Court deficiency hearing under SITA).

The Legislature of American Samoa responded by enacting the "Revenue Recoupment Act of 1987," adding A.S.C.A. § 11.0533 as a new amendment to the SITA. Am. Samoa P.L. No. 20-51 § 3 (approved by the Governor Feb. 29, 1988 and effective. June 4, 1988). The new amendment added a fourth tax bracket to SITA that was deliberately removed from IRC § 11(b).[1] The rates established in the "Revenue

---

[1] 26 U.S.C.A. § 11(b), as amended by U.S. Pub. L. 99-514, reads:
> **(b) Amount of tax.--**
> **(1) In general.** --The amount of tax imposed by subsection (a) shall be the sum of--
>> **(A)** 15 percent of so much of the taxable income as does not exceed $50, 000,
>> **(B)** 25 percent of so much of the taxable income as exceeds $50,000 but does not exceed $75,000, and
>> **(C)** 34 percent of so much of the taxable income as exceeds $75,000.
>
> In the case of a corporation which has taxable income in excess of $100,000 for any taxable year, the amount of tax determined under the preceding sentence of such taxable year shall be increased by the lesser of (i) 5 percent of such excess, or (ii) $11,750.

A.S.C.A. § 11.0533(b) reads:
> 11(b) Amount of tax.
> The amount of tax imposed by subsection (a) shall be the sum of--
> (1) 15 percent of so much of the taxable income as does not exceed $50,000,

Recoupment Act of 1987" were to remain in effect until July 1, 1989. A.S.C.A. § 11.0533(b); P.L. No. 20-51 § 3. However, in the following year, the Legislature aménded § 11.0533 and removed this sunset provision by deleting subsection (b) in its entirety. Am. Samoa P.L. No. 21-8 § 1 (effective July 22, 1989). Thus, the corporate income tax rates created by the "Revenue Recoupment Act of 1987" in A.S.C.A. § 11.0533 effectively became permanent statutory law.

Boral argues, however, that when IRC § 11(b) was once again amended in 1993, *see* U.S. Pub. L. 103-66 (effective Aug. 10, 1993), it was reincorporated into the SITA through A.S.C.A. § 11.0403(a) and implicitly repealed A.S.C.A. § 11.0533. Needless to say, the current IRC corporate tax rates, enacted in 1993, are substantially less than the corporate rates found in A.S.C.A. § 11.0533.[2] Iaulualo on the other hand

---

(2) 25 percent of so much of the taxable income as exceeds $50,000 but does not exceed $75, 000,

(3) 34 percent of so much of the taxable income as exceeds $75,000 but does not exceed $650,000, and

(4) 44 percent of so much of the taxable income as exceeds $650,000.

In the case of a corporation which has taxable income in excess of $100,000 for any taxable year, the amount of tax determined under the preceding sentence for such taxable year shall be increased by the lesser of (a) 5 percent of such excess or (b) $11,750.

[2] 26 U.S.C.A. § 11(b) currently reads:

**(b) Amount of tax.--**

**(1) In general.** --The amount of tax imposed by subsection (a) shall be the sum of--

**(A)** 15 percent of so much of the taxable income as does not exceed $50,0000,

**(B)** 25 percent of so much of the taxable income as exceeds $50,000 but does not exceed $75,000,

**(C)** 34 percent of so much of the taxable income as exceeds $75,000 but does not exceed $10,000,000, and

**(D)** 35 percent of so much of the taxable income as exceeds $10,000,000.

In the case of a corporation which has taxable income in excess of $100,000 for any taxable year, the amount of tax determined under the preceding sentence for such taxable year shall be increased by the lesser of (1) 5 percent of such excess, or (ii) $11.750. In the case of a corporation which has taxable income in excess of $15,000,000, the amount of the tax

counters that A.S.C.A. § 11.0533 is, and has been since it was passed, the corporate tax rate of American Samoa notwithstanding any subsequent changes to the IRC. Both parties make valid points. Standing alone, A.S.C.A. § 11.0403 presently adopts the 1993 version of IRC § 11(b), which has not been subsequently modified by enactment of a local statute. Standing alone, A.S.C.A. § 11.533 presently eliminates the 1986 version of IRC § 11(b).

█ The decision in this case, therefore, is one of statutory interpretation, which is purely a question of law to be decided by the court. *United States v. Blue Cross Blue Shield of Mich.*, 859 F. Supp. 283, 286 (E.D. Mich. 1994). The purpose of statutory interpretation is to effectuate the intention of the legislature. *Id.* We begin, as always, by determining "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). We do so because "[o]ften these words are sufficient in and of themselves to determine the purpose of the legislation." *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 543 (1940). In this case, however, the two resulting sets of distinct corporate income tax rates established by reading the plain language of the two statutes creates an ambiguous and irreconcilable impasse at face value.

█ When the words are either reasonably susceptible to different meanings, conflict with the overall statutory purpose, or cause absurd results, a court must look beyond literal statutory language. *Int'l Tel. & Tel. Corp. v. General Tel. & Elecs.Corp.*, 518 F.2d 913, 917 (9th Cir. 1975). We analyze "the design of the statute as a whole and . . . its object and policy." *Crandon v. United States*, 494 U.S. 152, 158 (1990). In this respect, it is "proper to examine sources other than [the statute's] language for evidence of legislative intent, and the legislative history of the statute in question is, of course, relevant." *Kennedy Bros. v. Property Tax Appeal Bd.*, 510 N.E.2d 1275, 1279 (Ill. App. Ct. 1987).[3]

---

determined under the foregoing provisions of this paragraph shall be increased by an additional amount equal to the lesser of (i) 3 percent of such excess, or (ii) $100,000.

[3] Boral also argues that revenue-raising acts should be construed strictly against the government and in favor of the taxpayer. *See United States v. Merriam*, 263 U.S. 179, 187-88 (1923). While generally true, Boral's contention sweeps too broadly. This canon of construction applies "only when there is doubt as to whether a statue or ordinance imposing or increasing a tax applies to certain taxpayers." *Kennedy Bros.*, 510 N.E.2d at L279. At issue here is not whether the corporate tax applies to Boral, but, rather, what rate Boral should pay. The rule of leniency is not invoked.

A.S.C.A. § 11.0403 only adopts the income tax and income tax rules that are "not clearly inapplicable or incompatible with the intent of [that] section." It does "not purport to supplant federal tax laws, but it merely creates an additional, territorial tax modeled on the federal tax." *Alamoana Recipe Inc. v. Am. Samoa Gov't*, 24 A.S.R.2d 156, 157 (Trial Div. 1993). This intent to create two different statutory schemes was evident in the adoption of § 11.0533.

The Legislature stated in the preamble to the act that its purpose was "[t]o restore tax revenues lost by American Samoa as a consequence of the enactment by the United States Congress of the Tax Reform Act of 1986." The Legislature found that the economic considerations that led the U.S. Congress to reduce the corporate tax rates were "not applicable across the board to American Samoa's island economy." Am. Samoa P.L. No. 20-51 § 2(3). Such a reduction would "be expected to result in a substantial loss of tax revenues and in substantial budgetary deficits." *Id.* at § 2(4). Therefore, "in order to secure the welfare of the Territory and its inhabitants," the Legislature found it desirable to retain higher tax rates for "large corporate enterprises." *Id.* at §§ 2(6), (7).[4]

Also compelling is the fact that the Legislature originally intended for § 11.0533 to last for one year, presumably to allow the government to adjust their budget to the expected losses in revenue. As already noted, the very next year the Legislature repealed the sunset provision. Am. Samoa P.L. No. 21-8 § 1. The Legislature could not have known at the time that the U.S. Congress would eventually readjust IRC § 11(b). We glean from this that when our Legislature repealed the sunset provision they intended to keep the higher corporate tax rate until they saw fit to change it. When IRC § 11(b) was amended in 1993, it therefore became a provision that was "incompatible" with the intent of A.S.C.A. § 11.0403 to create a "separate territorial income tax" as manifested through § 11.0533.

We cannot accept the interpretation Boral urges that whenever the IRC is amended, it automatically becomes the law of the territory. Citing A.S.C.A. § 11.0403, Boral latches onto the phrase that "the income tax and the income tax rules . . . enacted or adopted [under the IRC] *shall* be deemed to impose a separate territorial tax." (emphasis added). Boral's interpretation fails to look at the word "shall" in its proper context. As we have noted, IRC provisions "shall" become the law of the territory only when they are not "inapplicable or incompatible" with SITA.[5]

---

[4] The Legislature, also replaced all references in the SITA to the IRC of 1954 with references to the IRC of 1986. Am. Samoa P.L. No. 20-51 § 5.

[5] Boral argues that interpreting § 11.0533 in the manner we have, if

We conclude that the corporate income tax rates in effect in American Samoa are the tax rates set forth in A.S.C.A. § 11.0533. ASG is therefore entitled to payment of the assessed deficiencies for Boral's tax years 1997, 1998, and 1999.

D. Penalties

Iaulualo also assessed an accuracy-related penalty of 20% against Boral for "negligence or disregard of rules or regulations" and/or a "substantial understatement of income tax." SITA § 6662 (a)-(b). Iaulualo moved for summary judgment on this issue. Boral did not make a cross-motion for summary judgment on this point but instead opposed Iaulualo's motion claiming that a material issue of fact existed.

In support of its opposition to Iaulualo's motion for summary judgment, Boral submitted an affidavit from their vice president, Richard Young, Jr., who stated that he was in charge of filing Boral's tax returns for the pertinent years. He stated that he engaged Daniel R. King ("King") to

---

applied to other SITA sections, will lead to absurd results. It notes that A.S.C.A. §§ 11.0504 and 11.0506 are incompatible with the current IRC provisions that those sections modified and to therefore uphold them as good law would create similar conflicts. For example, A.S.C.A. § 11.0504 amended IRC § 38, which applied to an "investment credit" for depreciable property. That section was repealed in 1984 and replaced with a general business credit. *See* U.S. Pub. L. No. 98-369, §§ 473(m) (1) & 612 (E)(1). Boral argues that the only logical course is to find that all these SITA provisions have been implicitly repealed by subsequently enacted IRC amendments.

Because the interpretation of these sections is not an issue before us, we are cautious to comment on Boral's argument. We do note that we have not merely accepted § 11.0533 at its face value. Rather, we have reached our decision only after undertaking an exhaustive analysis, of all the relevant statutory provisions and legislative history. Were we ever to confront the seeming conflicts of § 11.0504 or § 11.0506, we would apply the same mode of analysis to reach a result that would be consistent with this court's methodology and the Legislature's intent.

We also note that in 2001, the Legislature froze the incorporation of the IRC as of December 31, 2001. Am. Samoa P.L. No. 27-15 (approved by the Governor and, as emergency legislation, effective on October 22, 2001). That amendment would surely affect our interpretation of any conflicting statutes. But that aside, because the Territory's income tax laws are no longer subject to IRC amendments, it would behoove the Legislature to clean up Title 11 and delete the provisions, if any, that have been implicitly or explicitly repealed by their actions.

prepare and file Boral's returns and that he relied on King's advice concerning which tax rate was applicable. Additionally, Boral submitted an affidavit by King, a Certified Public Accountant, who acknowledged that he prepared Boral's tax returns for the pertinent years. Furthermore, King himself relied on advice from an ASG employee and tax advisor to the ASG Tax Office.

 We need not dwell on this point. We agree with Boral that a material issue of fact remains. "While hiring an attorney or accountant does not insulate the taxpayer from negligence penalties, good faith reliance on professional advice concerning tax laws is a defense." *Betson v. C.I.R. Serv.*, 802 F.2d 365, 372 (9th Cir. 1986) (citing *United States v. Boyle*, 469 U.S. 241, 250-252 (1985)); *see also* SITA § 6664(c). *But see Stroud v. United States*, 906 F. Supp. 990, 997 (D.S.C. 1995) (plaintiffs failed to carry burden that IRS's finding of negligence was erroneous when nothing in the record offered evidence that they relied on their attorney's advice).

Clearly, Boral has alleged facts sufficient to survive a motion for summary judgment on the assessed penalties for Boral's tax years 1997, 1998, and 1999.[6] ASG is therefore not entitled to a summary judgment for payment of those assessed penalties.

E. Interest

SITA §§ 6601, 6621 provides for payment of interest on underpayment of income taxes owed. ASG is therefore also entitled to summary judgment requiring payment of interest on assessed deficiencies, but not on the assessed penalty amounts, for Boral's tax years 1997, 1998, and 1999, in accordance with SITA §§ 6601, 6621.

F. Costs

SITA § 7430 provides for payment of reasonable litigation costs, including reasonable court costs and attorney's fees, to the prevailing party. However, ASG is not a "prevailing party" by definition, SITA § 7430(c)(2)(A), and is therefore not entitled to recover reasonable litigation costs on its favorable summary judgment for Boral's tax years 1997, 1998, and 1999.

On the other hand, Boral is a "prevailing party" by the same definition.

---

[6] Boral's uncontroverted reliance of professional advice stated under oath appears, however, sufficient to support summary judgment in Boral's favor on the penalties issue should it remain undisputed upon Boral's motion for summary judgment on this issue.

It may therefore be entitled to recover reasonable litigation costs against ASG on its favorable summary judgment for Boral's tax years 1994 and 1996. *See* SITA § 7420(b)(2). We do not, however, have enough information to make a proper determination as to the amount of those costs owed. We leave it to Boral to file in a timely manner appropriate supporting documentation of its reasonable litigation costs.

## Order

1. ASG's motion for summary judgment is granted as the motion pertains to the income tax deficiencies assessed against Boral in the amounts of $40,849.56 for its tax year 1997, $55,010.00 for its tax year 1998, and $52,599 for its tax year 1999, plus interest accrued to date and continuing to accrue on each of the deficiency amounts, in accordance with SITA §§ 6601, 6621, until its summary judgment is paid in full. ASG's summary judgment shall not include litigation costs.

2. ASG's motion for summary judgment is denied as the motion pertains to the penalties assessed against Boral for its tax years 1997, 1998, and 1999. Genuine issues of material facts are triable as to the penalties assessed and interest on the penalties for Boral's tax years 1997, 1998, and 1999.

3. Boral's motion for summary is granted as the motion pertains to the income tax deficiencies, penalties, and interest assessed against Boral for its tax years 1994 and 1996, and is denied, as the motion pertains to the income tax deficiencies and interest assessed on each of the deficiency amounts for its tax years 1997, 1998, and 1999.

4. Either party may request the court to adjudicate the amounts of its respective entitlement to interest or reasonable litigation costs, including reasonable attorney's fees, by filing with the court and serving on the opposing party one or more affidavits of its counsel or other suitable person(s) setting forth the amounts claimed. If the other party contests the amounts, the court will conduct an evidentiary or other appropriate hearing and determine the issues.

It is so ordered.